915 F.2d 1120
 Fed. Sec. L. Rep. P 95,511, 17 Fed.R.Serv.3d 858
 Albert A. ROBIN, Sheli Z. Rosenberg, Donald S. Chisholm, and
Equity Holdings, a partnership,
Plaintiffs-Appellants, Cross-Appellees,
v.
ARTHUR YOUNG & COMPANY, a partnership, Defendant-Appellee,
Cross-Appellant.
 Nos. 88-3506, 89-1052.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 28, 1989.
Decided Oct. 4, 1990.
Rehearing and Rehearing In Banc
Denied Nov. 15, 1990.
 
 James S. Gordon and Edward Slovick, Chicago, Ill., for Albert A. Robin, Sheli Z. Rosenberg, Donald S. Chisholm, and Equity Holdings.
 Robert F. Finke, Rosanne J. Faraci, Mayer, Brown & Platt, Chicago, Ill., Carl D. Liggio, John Matson, and Patricia A. McGovern, New York City, for Arthur Young & Co.
 Before WOOD, Jr., RIPPLE and MANION, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 In this securities action, plaintiffs appeal from the dismissal of their amended complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Defendant cross-appeals from the denial of its motion to dismiss on limitations grounds.
 
 I. FACTUAL and PROCEDURAL BACKGROUND
 
 2
 In early December 1983, plaintiffs Albert A. Robin, Sheli Z. Rosenberg, Donald S. Chisholm, and Equity Holdings bought 61,000 shares of Doctors Officenters Corporation ("DOC") at $9.00 per share pursuant to a December 7, 1983, prospectus. The prospectus stated in its summary that the purchase of its shares of common stock "is speculative and involves a high degree of risk." The prospectus contained DOC's financial statements, the most recent of which were dated July 31, 1983, as well as defendant Arthur Young & Company's ("Arthur Young") report on these financial statements. Arthur Young's unqualified report was dated August 19, 1983. In its report, Arthur Young stated that it had examined DOC's balance sheet at July 31, 1983, and December 31, 1982, and the related statements of operations, equity deficiency and changes in financial position for the seven months ended July 31, 1983, the year ended December 31, 1982, and the period December 7, 1981 (inception), to December 31, 1981. Arthur Young stated further in its report that it found the financial statements to present fairly DOC's financial position and that its examinations were made in accordance with generally accepted auditing standards and other necessary auditing procedures.
 
 
 3
 DOC was liquidated on February 26, 1985, and each shareholder received $2.72 per share. On July 13, 1987, plaintiffs filed suit against Arthur Young alleging violations of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and rule 10b-5 (Count I), as well as common law fraud (Count II).[1] On May 4, 1988, the district court granted Arthur Young's motion to dismiss on the grounds that the applicable statute of limitations barred the action and that plaintiffs had failed to state a claim under federal securities laws.
 
 
 4
 Plaintiffs filed an amended complaint on June 16, 1988, which expanded the allegations in Count II. In their amended complaint, plaintiffs alleged that the primary violators knowingly and intentionally failed to disclose in the prospectus that Arthur Young's decision to issue its unqualified report was based on facts that were no longer true as of December 7, 1983, the date of the prospectus. Plaintiffs further alleged that Arthur Young aided and abetted the primary violators both by consenting to the use of its report in the prospectus with knowledge that the prospectus was false and misleading and by not withholding that consent until DOC had made adequate disclosure. Arthur Young again filed a motion to dismiss for the same reasons set out in its earlier motion--namely, that the action was barred by the statute of limitations and that plaintiffs had failed to state a claim for aiding and abetting under section 10(b) and rule 10b-5.
 
 
 5
 The district court, after denying Arthur Young's motion to dismiss based on the statute of limitations, dismissed the amended complaint for failure to state a claim under federal securities laws. The court held that plaintiffs' claims did not satisfy the Seventh Circuit requirements for aiding and abetting on the grounds that plaintiffs had not adequately alleged that Arthur Young had the requisite scienter and that Arthur Young had no duty to force DOC to make the disclosures plaintiffs claim should have been made.
 
 
 6
 Plaintiffs appeal from the dismissal of their amended complaint and Arthur Young cross-appeals from the denial of its motion to dismiss. We have jurisdiction under 28 U.S.C. Sec. 1291 and now affirm.
 
 II. ANALYSIS
 A. Statute of Limitations
 
 7
 In its cross-appeal, Arthur Young renews its argument that actions under section 10(b) and rule 10b-5 should be governed by federal rather than state limitations periods. Specifically, Arthur Young argues that we should adopt the limitations period from section 13 of the Securities Act of 1933 and sections 9(e), 18(c), and 29(b) of the Securities Exchange Act of 1934 in place of the three-year limitation period provided by the Blue Sky law of Illinois, ILL.REV.STAT. ch. 121 1/2, para. 137.13 D. Under the relevant federal law, plaintiffs must file suit within one year after the discovery of facts constituting the violation, and in no event more than three years after the violation. Although plaintiffs brought this action more than three years after the sale of securities (the sale occurred on or around December 7, 1983, and this suit was filed on July 13, 1987), the state limitations period, unlike the federal limitations period with its three-year absolute bar, may be tolled by certain instances of fraud. The district court, applying the three-year Illinois statute and the federal tolling doctrine, rejected Arthur Young's claim that the action was time-barred, holding that the complaint raised factual issues as to whether the statute should be tolled and when the limitations period began to run.
 
 
 8
 Since this case was argued, the Seventh Circuit has ruled on the issue raised by Arthur Young in its cross-appeal. In Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir.1990), we expressly overruled our prior precedents to hold that actions under section 10(b) and rule 10b-5 are governed by the limitations period found in section 13 of the Securities Act of 1933: one year after the plaintiff discovers the facts constituting the violation and in no event more than three years after the violation. We left open all questions having to do with retroactive application of our decision in Short. Id. at 1038-39. Although application of section 13 would bar plaintiffs' suit in the present case, we do not reach the issue of whether Short applies retroactively because plaintiffs have failed to state a claim for aiding and abetting.
 
 
 9
 B. Aiding and Abetting Liability Under Section 10(b) and Rule 10b-5
 
 
 10
 This circuit recognizes a cause of action for aiding and abetting violations of section 10(b) and rule 10b-5.[2] E.g., DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir.1990); Latigo Ventures v. Laventhol & Horwath, 876 F.2d 1322 (7th Cir.1989); see also Schlifke v. Seafirst Corp., 866 F.2d 935, 946 (7th Cir.1989) (citing cases). At the same time, this circuit has also questioned the propriety of implying such a cause of action from these securities provisions, see Renovitch v. Kaufman, 905 F.2d 1040, 1045 n. 7 (7th Cir.1990) (citing cases), and we observe that the Supreme Court has twice reserved decision on this issue. Herman & MacLean v. Huddleston, 459 U.S. 375, 379 n. 5, 103 S.Ct. 683, 685 n. 5, 74 L.Ed.2d 548 (1983); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 191 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1975). Our recognition of aider and abettor liability is rooted in 20 + years' precedent, however, and we stand by this decision until the Supreme Court tells us otherwise. DiLeo, 901 F.2d at 628.[3]
 
 
 11
 Aider and abettor liability requires at a minimum that the alleged aider and abettor (1) commit one of the "manipulative or deceptive" acts prohibited under section 10(b) and rule 10b-5 (2) with the same degree of scienter that primary liability requires.[4] E.g., Renovitch, 905 F.2d at 1045; Schlifke, 866 F.2d at 947; LHLC Corp., 842 F.2d at 932; First Interstate Bank of Nev. v. Chapman & Cutler, 837 F.2d 775, 780 n. 4 (7th Cir.1988); Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490, 495 (7th Cir.1986). We consider each of these elements in turn.[5]
 
 1. Manipulative or Deceptive Act
 
 12
 Plaintiffs contend that the actions described in paragraphs 14 through 19 of their amended complaint constitute manipulative or deceptive acts proscribed by section 10(b) and rule 10b-5.
 
 
 13
 Paragraphs 14 through 16, under the heading "Active Conduct," allege that Arthur Young aided and abetted the primary violators by affirmatively consenting in writing to the use of its report in the prospectus with the knowledge that the prospectus was false and misleading. These paragraphs further allege that consent to the inclusion of the report in the prospectus was required before the registration statement could become effective, that Arthur Young knew its consent was required, and that without the registration statement, the securities could not have been offered to the public and the primary violators could not have defrauded the investors.
 
 
 14
 Paragraphs 17 through 19, under the heading "Passive Conduct," allege that Arthur Young discovered facts occurring between July 31, 1983, the date of DOC's financial statements, and before December 7, 1983, the date of the prospectus, which facts required adjustment of DOC's financial statements and/or financial disclosure by DOC.[6] The amended complaint alleges further that Arthur Young had a duty, under generally accepted auditing standards, to advise DOC to make adjustments in its financial statements and/or appropriate disclosure to prevent future reliance on its report and/or to prevent DOC's financial statements from being misleading as of the date of their reissuance in the December 7, 1983, prospectus. According to the amended complaint, in the event that DOC did not make the advised adjustments or disclosures, Arthur Young had the further duty under generally accepted auditing standards to (1) notify DOC that its report was not to be associated with the financial statements; (2) notify the appropriate regulatory agencies (including the SEC) that its report should no longer be relied on; (3) notify the investing public, as far as reasonably practicable, that its report should no longer be relied upon; and (4) to withhold or to withdraw consent to the use of its report in the prospectus. Finally, the amended complaint alleges that contrary to its duty to plaintiffs and other members of the investing public, Arthur Young failed to take any of the above-described actions.
 
 
 15
 Turning first to the "active conduct" described in paragraphs 12 through 16, we observe that plaintiffs have not alleged any problem with the audited financial statements of July 31, 1983, which are included in the prospectus and are the subject of Arthur Young's report. Nor is there any allegation that Arthur Young's report itself is incorrect; indeed, plaintiffs' counsel at oral argument acknowledged that the report was accurate when written. Rather, what plaintiffs allege is that the prospectus was false and misleading because circumstances had changed between the date of the report and the date of the prospectus, that Arthur Young knew this, and that had Arthur Young's report not been included in the prospectus, the registration statement could not have become effective.
 
 
 16
 Even assuming that Arthur Young knew that the prospectus was false and misleading, paragraphs 12 through 16 allege only that had Arthur Young not consented to the use of its report in the prospectus, the primary violators would have been unable to defraud plaintiffs. It is well settled in this circuit, however, that but-for causation is not sufficient to state a claim for aiding and abetting. E.g., Renovitch, 905 F.2d at 1047; First Interstate Bank, 837 F.2d at 779; see also Schlifke, 866 F.2d at 947. Because the connection alleged by plaintiffs between Arthur Young's consent to the use of its report in the prospectus and plaintiffs' loss on their investments amounts to nothing more than this but-for causation, the "active conduct" described in plaintiffs' amended complaint does not constitute a manipulative or deceptive act for purposes of aiding and abetting liability. See Renovitch, 905 F.2d at 1047; First Interstate Bank, 837 F.2d at 779.
 
 
 17
 Turning next to Arthur Young's "passive conduct," the amended complaint alleges that Arthur Young, knowing that certain changes occurred between the date of the financial statements and the date of the prospectus, nonetheless failed to carry out the duties described in paragraphs 17 through 19, which duties included advising DOC to make disclosures, making certain disclosures itself in the event of DOC's inaction, and withholding consent to the use of its report in the prospectus.
 
 
 18
 As we explained in Barker, when the manipulative or deceptive act is "the failure to 'blow the whistle,' the defendant must have a duty to blow the whistle." 797 F.2d at 496 (emphasis in original); see also Schlifke, 866 F.2d at 948 (quoting Barker ); LHLC Corp., 842 F.2d at 932 ("When the problem consists in keeping silence while the primary violator carries out the fraud, the plaintiff must show that the silent person had a legal duty to speak"); First Interstate Bank, 837 F.2d at 778 (quoting Barker ). General duties to speak do not find their source in securities laws, Basic Inc. v. Levinson, 485 U.S. 224, 239 & n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988), but instead "must come from a fiduciary relation outside securities law." Barker, 797 F.2d at 496; see also Schlifke, 866 F.2d at 948.
 
 
 19
 Plaintiffs contend that the source of Arthur Young's duty is to be found in certain standards promulgated by the American Institute of Certified Public Accountants ("AICPA"), one of the main sources of professional standards for accountants.[7] Specifically, plaintiffs argue that sections 711.12, 560, and 561 of the AICPA Codification of Statements on Auditing Standards (1985) (the "Auditing Standards") impose on Arthur Young the duty to take the actions described in paragraphs 17 through 19 of their amended complaint.
 
 
 20
 In discussing the duty to disclose, we have said that there must be a legal duty to speak, LHLC Corp., 842 F.2d at 932, and that state law will generally be the source of this duty. DiLeo, 901 F.2d at 628. Assuming, without deciding, the proposition that the failure to comply with the Accounting Standards constitutes a violation of state common law, the Auditing Standards set out the actions that plaintiffs allege Arthur Young should have taken.[8] The question then becomes whether an accounting firm's failure to comply with these professional standards constitutes a manipulative or deceptive act for purposes of aider and abettor liability.
 
 
 21
 Plaintiffs do not cite any cases that suggest that a failure to comply with the Auditing Standards may give rise to an action for securities fraud under section 10(b) and rule 10b-5. Instead, plaintiffs primarily rely on Rudolph v. Arthur Andersen, 800 F.2d 1040 (11th Cir.1986), cert. denied, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987), a decision that substantially expands the scope of accountants' liability and one that we have previously declined to follow. See Latigo Ventures, 876 F.2d at 1327. We remain unpersuaded that accountants' liability should be expanded to this extent and thus decline again to adopt the position of the Eleventh Circuit.
 
 
 22
 Whether a lack of compliance with the Auditing Standards will expose an accounting firm to liability for aiding and abetting, while an interesting question, is one that we need not decide at this time. Even if we assume that a failure to comply with these professional standards constitutes a manipulative or deceptive act, this is not enough because plaintiffs have failed to allege that Arthur Young acted with scienter. And, unless the defendant acts with the requisite intent, there can be no liability for aiding and abetting, for it is the intent requirement that distinguishes an action for securities fraud from an action for negligence or malpractice. See, e.g., Ernst & Ernst, 425 U.S. at 199, 96 S.Ct. at 1383; Barker, 797 F.2d at 497. We thus conclude our discussion with an analysis of the scienter requirement.
 
 2. Scienter
 
 23
 In Ernst & Ernst v. Hochfelder, the Supreme Court held that persons may be held liable for aiding and abetting under section 10(b) and rule 10b-5 only if they act with scienter. 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). Scienter, as the Supreme Court defined it in this context, is the "intent to deceive, manipulate, or defraud." 425 U.S. at 193, 96 S.Ct. at 1381. Negligent conduct is thus not sufficient; aiders and abettors must commit the proscribed act with the intent required for a primary violation. This circuit has held that the requirement of wrongful intent is satisfied by a showing of reckless conduct. See, e.g., Rowe v. Maremont Corp., 850 F.2d 1226, 1238 (7th Cir.1988); Barker, 797 F.2d at 495.
 
 
 24
 Turning to the amended complaint, the allegations having to do with Arthur Young's mental state occur in paragraphs 13, 16, and 20. Paragraph 13 alleges,
 
 
 25
 At the time the prospectus was issued, Arthur Young had knowledge of each of the facts omitted from the prospectus, as hereinabove alleged, and had knowledge that the prospectus failed to disclose each of said facts. Alternatively, Arthur Young's lack of knowledge was due to a reckless disregard of the truth.
 
 
 26
 Paragraph 16 alleges, "Arthur Young, with knowledge that the prospectus was false and misleading, as hereinabove alleged, affirmatively consented to the use of its report in the prospectus." Finally, paragraph 20 of the amended complaint alleges,By virtue of the foregoing active and passive conduct, Arthur Young knowingly and intentionally aided and abetted the primary violators in the perpetration of the fraud upon plaintiffs and the members of the plaintiffs' class hereinabove alleged. Alternatively, Arthur Young's active and passive conduct ... constituted an extreme departure from the standards of ordinary care which presented a danger of misleading buyers of DOC's securities that was either known to Arthur Young or so obvious that Arthur Young should have been aware of it.
 
 
 27
 Plaintiffs contend that these allegations are sufficient to satisfy the scienter requirement for aiding and abetting liability.
 
 
 28
 Although states of mind may be pleaded generally under Fed.R.Civ.P. 9(b), the rule requires plaintiffs to plead "with particularity" any "circumstances constituting fraud." See also DiLeo, 901 F.2d at 627. Assertions that Arthur Young had knowledge that the prospectus was false and misleading and that Arthur Young knowingly and intentionally aided and abetted the primary violators are nothing more than rote conclusions. As we stated in DiLeo, while the defendant's mental state need not be pleaded with particularity, "the complaint must still afford a basis for believing that plaintiffs could prove scienter." Id. at 629. Plaintiffs' amended complaint fails to do this.
 
 
 29
 For example, the amended complaint alleges that Arthur Young consented to the use of its report in the prospectus while knowing that the prospectus was false and misleading. Yet it alleges no facts to show how Arthur Young knew that the basis for its decision to issue an unqualified report was no longer sound. How Arthur Young would have known, however, is important in this case. Arthur Young would not have discovered the events that negatively affected DOC's financial health during the course of a routine audit because they occurred between August 19, 1983, the date of Arthur Young's report and December 7, 1983, the date of the prospectus.[9] Although the Auditing Standards suggest certain procedures a firm should use to keep itself informed of events during this time lag,[10] plaintiffs do not allege that Arthur Young knew as a result of following those procedures.
 
 
 30
 Plaintiffs' claims that Arthur Young should have known that the prospectus was false and misleading also fail to allege scienter. While reckless conduct may satisfy the scienter requirement, bare allegations that Arthur Young should have known or that its knowledge was due to a reckless disregard of the truth are not sufficient to turn a possible negligence or malpractice action into an action for securities fraud. See, e.g., Barker, 797 F.2d at 496. Plaintiffs must provide more than conclusory allegations to satisfy rule 9(b)'s requirement that the circumstances of the fraud be pleaded with particularity.
 
 
 31
 Finally, the amended complaint as a whole provides no grounds for believing that plaintiffs could prove scienter. As we stated in Barker, "[i]f the plaintiff does not have direct evidence of scienter, the court should ask whether the fraud (or cover-up) was in the interest of the defendants. Did they gain by bilking the buyers of the securities?" Barker, 797 F.2d at 497. Here, as in DiLeo, there are no allegations that Arthur Young had anything to gain from any fraud by the primary violators. Although the amended complaint does allege that Arthur Young received $90,000 for its services to DOC, this is not sufficient to support an inference of scienter. As we explained in DiLeo, an accounting firm's "greatest asset is its reputation for honesty, followed closely by its reputation for careful work. Fees [an accounting firm receives for its services] ... could not approach the losses [the firm] ... would suffer from a perception that it would muffle a client's fraud." 901 F.2d at 629.
 
 
 32
 We therefore conclude that plaintiffs have not adequately alleged that Arthur Young acted with the intent required to support a claim for aiding and abetting. The district court's dismissal of plaintiffs' amended complaint is
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs also filed two other related suits. The first was against DOC, FMP (a medical partnership that owned DOC stock), and various officers and directors of DOC. The second was against the law firm that was counsel to DOC in the public offering and various officers and directors of DOC
 
 
 [2]
 Section 10(b) prohibits persons from using or employing any "manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security. 15 U.S.C. Sec. 78j(b); rule 10b-5 makes it unlawful for any person, in connection with the purchase or sale of a security:
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.
 
 
 [17]
 C.F.R. Sec. 240.10b-5
 
 
 [3]
 Although Arthur Young argues on appeal that we should reconsider our position, it did not raise this argument before the district court and we will therefore not consider it on appeal. Patrick v. Jasper County, 901 F.2d 561, 566 (7th Cir.1990). At the same time we note that even had Arthur Young raised this argument below, reconsideration of our position would not be appropriate because plaintiffs' amended complaint fails to state a claim for aiding and abetting
 
 
 [4]
 To state a claim for a primary violation, the plaintiff must demonstrate that the defendant (1) made an untrue statement of material fact or omitted a material fact that rendered misleading the statements made (2) in connection with the purchase or sale of a security, (3) with the intent to mislead, and (4) which caused the plaintiff's loss. Renovitch, 905 F.2d at 1045 n. 7; Schlifke, 866 F.2d at 943. Secondary liability or liability for aiding and abetting differs from primary liability in that secondary liability can attach to one who has not actually purchased or sold a security. Renovitch, 905 F.2d at 1045 n. 7; LHLC Corp. v. Cluett, Peabody & Co., 842 F.2d 928, 932 (7th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988). We assume for purposes of this appeal that primary violators committed the acts alleged in plaintiffs' amended complaint
 
 
 [5]
 Other courts have established additional requirements for aiding and abetting liability: (1) the existence of a primary violator; (2) knowledge by the aider and abettor of the primary violation; and (3) substantial assistance on the aider and abettor's part in perpetrating the primary violation. Barker, 797 F.2d at 496. It is unnecessary for us to analyze these additional factors, however, because plaintiffs' amended complaint does not allege even the minimal requirements of an aiding and abetting claim. See Schlifke, 866 F.2d at 947; Barker, 797 F.2d at 496
 
 
 [6]
 The amended complaint alleges that Arthur Young determined that its report would not include a going-concern qualification based on the facts that: (1) DOC was in the process of a public offering of securities that would generate approximately $30 million; (2) DOC had $500,000 remaining on its bank line of credit; (3) DOC had approximately $1 million of accounts receivable that could be used as collateral for any borrowings; and (4) DOC had additional cash available from private investors. According to the amended complaint, Arthur Young knew at the time the prospectus was issued that these facts were not true. The amended complaint further alleges that Arthur Young knew that although the prospectus stated that DOC had a cash overdraft of $123,000, $128,000 of collectible receivables outstanding, and $500,000 remaining under its bank line of credit, on October 31, 1983, DOC had an overdraft of $618,000, and on December 7, 1983, DOC had no available balance remaining on its bank line of credit. Finally, the amended complaint alleges that Arthur Young knew that DOC had been unable to generate sufficient cash between August 1, 1983, and December 7, 1983, to pay its liabilities when due
 
 
 [7]
 See Shroyer, Accountants and the Dynamics of Duty, 14 WM. MITCHELL L.R. 77, 82 n. 3 (1988), for a list of treatises discussing these standards
 
 
 [8]
 Arthur Young argues that under the Auditing Standards, its only duty was to correct errors in the financial statements and that there is no duty to update information to the effective date of the prospectus. This is incorrect. Section 711 governs filings under federal securities statutes. Section 711.12, which deals with the accountant's response to subsequent events, states that if an accountant discovers subsequent events requiring adjustment or disclosure in the financial statements and the client refuses to make appropriate adjustment or disclosure, he should consider withholding consent to the use of his report in the prospectus and should follow the procedures in section 561.08-.09. Section 561.08 describes the actions that paragraph 17 of the amended complaint alleges Arthur Young should have taken with respect to notification to DOC, to regulatory agencies, and to the investing public
 
 
 [9]
 As we mentioned previously, plaintiffs do not contend that the report or the financial statements that were the basis of the report were false at the time they were completed
 
 
 [10]
 Section 711.10 of the Auditing Standards provides, for example, that an auditor should read the prospectus and should ask and obtain written representations from the relevant officers and others about whether any events have occurred that materially affect the financial statements or need to be disclosed so that the financial statements are not misleading