**LATIGO VENTURES, et al.,**
**Plaintiffs–Appellants,**

v.

**LAVENTHOL & HORWATH,**
**Defendant–Appellee.**

No. 88–2821.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1989.

Decided June 8, 1989.

---

Michael T. Hannafan, Hannafan & Associates, Chicago, Ill., Brian W. Ohm, Robert A. Minish, Hugh V. Plunkett, III, Robert C. Moilanen, Minneapolis, Minn., for plaintiffs-appellants.

Roger B. Harris, Mitchell Bryan, Allen P. Grunes, Altheimer & Gray, Chicago, Ill., Barry S. Augenbaun, Gen. Counsel, Philadelphia, Pa., for defendant-appellee.

Before CUMMINGS, POSNER, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

A group of disappointed investors, Latigo Ventures, appeals the dismissal of its fraud suit against Laventhol & Horwath, the accounting firm that audited Xonics, Inc. The plaintiffs had bought stock in Xonics, a publicly traded manufacturer of medical equipment, for more than $7 million in a private placement, and shortly afterward Xonics had declared bankruptcy. The suit charges Laventhol & Horwath with having violated the Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5, and having aided and abetted Xonics's violations of Rule 10b–5. There are also pendent claims under state law (plus still other claims, which need not, however, be discussed separately). The district judge granted the defendant's Rule 12(b)(6) motion and dismissed the entire suit with prejudice. Although it is customary when the federal claims drop out of the case before trial for the district court to relinquish jurisdiction over any pendent state-law claims rather than resolving them on the merits, see, e.g., *Disher v. Information Resources, Inc.*, 873 F.2d 136, 137 (7th Cir.1989), the plaintiffs do not complain about the form of the dismissal of their pendent claims (that is, with prejudice); apparently they do not care to prosecute those claims in state court if their federal action flops. The defendant for its part does not question the existence of a cause of action for aiding and abetting a violation of Rule 10b–5 (see *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 946–48 (7th Cir.1989), and cases cited there), although it denies that the plaintiffs have pleaded the elements of the cause of action.

The chronology recounted in the 40–page complaint is pretty much all that is needed to show that the district judge was right to dismiss the case. Back in June 1982 Laventhol & Horwath had issued their annual audit of Xonics, covering Xonics's 1982 fiscal year, which had ended on March 31, 1982. The audit report removed an ominous qualification that had appeared in the previous six annual audit reports, to the effect that the financial results reported in it were subject to Xonics's being able to continue as a going concern. The ground for removing the qualification was that the company had made money in the last quarter of fiscal 1982 (i.e., the first quarter of calendar 1982) and anticipated continued profits. The anticipation proved unfounded. Xonics lost money steadily through the first three quarters of its 1983 fiscal year. In February and March 1983 Xonics decided to try to sell some stock on the open market. It wanted to register the stock with the SEC and to this end asked Laventhol & Horwath for consent to submit to the SEC the June 1982 audit report. La-

venthol & Horwath gave its consent even though—the complaint alleges, and we must take the allegations to be true—the accounting firm knew that the profits it had anticipated Xonics's making in fiscal 1983 had not materialized. The accounting firm's consent was included in the papers submitted to the Commission—along, however, with a statement that Xonics had actually lost money, rather than as anticipated made money, in the first three quarters of its 1983 fiscal year; results for the fourth quarter were not yet in. The complaint further alleges that in order to help Xonics conceal its losses, Laventhol & Horwath during that fourth quarter permitted Xonics to capitalize R & D expenditures that proper accounting practice would have dictated expensing. The complaint alleges that Laventhol & Horwath had permitted Xonics to do this in previous years as well, but only to a modest degree which apparently had not affected Xonics's profit-and-loss statements materially.

The private placement to the plaintiffs was made in April at a discount from the market price of Xonics's stock. In June, Laventhol & Horwath released its 1983 audit report, in which Xonics's losses were disguised by the capitalization of R & D expenses. Meanwhile Xonics was trying to get the stock it had sold to the plaintiffs registered, but this effort came a cropper when the SEC discovered that the R & D expenses had improperly been capitalized, and forced Xonics and Laventhol & Horwath to recompute Xonics's fiscal 1983 performance with the R & D properly expensed. The recomputation demonstrated large losses and precipitated Xonics's declaration of bankruptcy. All this is as alleged in the complaint; whether it's true or not is of no moment.

■ Investors cannot complain about a fraud that did not cause them any harm. See, e.g., *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Hence the plaintiffs cannot complain about the June 1983 audit report, which concealed Xonics's losses by capitalizing R & D expenses. They had bought their stock in April, two

months earlier, and they do not contend that if the bad news about Xonics had been broken to the world in June rather than a few months later they could have unloaded the stock at a smaller loss than they sustained as a result of the delay. A fraud that does not affect the decision to make the investment in which the loss complained of is incurred is not actionable under Rule 10b–5. *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir.1988). Nor do the plaintiffs argue that if Laventhol & Horwath had not permitted Xonics to capitalize its R & D expenditures, Xonics would not have gone through with the private placement to the plaintiffs or would have made different representations. They do not claim to have relied on the 1982 audit report or even to have read it, and although they allege that officers of Xonics made public statements referring to Laventhol & Horwath's removal in that report of the going-concern qualification that had appeared in the previous reports, they do not claim to have relied on these statements in deciding whether or at what price to buy Xonics stock in the private placement. They do not claim to have relied on Laventhol & Horwath's consent to Xonics's including that report with the papers it submitted to the SEC in connection with a proposal to register stock for sale to other investors. They do say that the consent was incorporated by reference in papers that Xonics gave them in the negotiations that preceded the private placement but they do not claim to have relied on the reference.

■ In *this* court the plaintiffs ask us to infer an allegation of reliance on the 1982 audit report from the reference in the complaint to public statements made by Xonics officers mentioning the report. But when counsel go to the trouble of drafting a 40–page complaint reciting the theory of the case in minute detail, we hesitate to infer an inadvertent omission to plead an essential element of the plaintiff's central claim. We are inclined to suspect that Rule 11 fears deterred the plaintiff's counsel from alleging a fact he could not prove.

■ We ascribe no magic powers to the word "reliance." See *Flamm v. Eberstadt*, 814 F.2d 1169, 1173 (7th Cir.1987). The word, indeed the concept, is just a short-hand method of invoking, in the circumstances of a Rule 10b–5 or other securities-fraud case, the requirement common to all tort cases of proving that the alleged tort actually harmed the plaintiff. *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 186 (3d Cir.1981). Where misrepresentations are made but not relied on directly or indirectly (we are about to turn to the indirect case), a plaintiff in a fraud case cannot show that he was harmed by them. When what is charged is not misrepresentation but omission, the word "reliance" is awkward and it is better to speak of the plaintiff's having been misled to his detriment. See *Affiliated Ute Citizens v. United States, supra*, 406 U.S. at 152–54, 92 S.Ct. at 1471–72. Although the plaintiffs in this case allege both misrepresentations and deceptive omissions by Laventhol & Horwath, they do not allege that these misrepresentations and deceptive omissions misled or deceived *them*. This failure is immaterial insofar as they charge Laventhol & Horwath with aiding and abetting Xonics's misrepresentations, but the only form of aiding and abetting charged, so far as we are able to dig out of a confusing complaint, is the failure to "blow the whistle" on Xonics's improper capitalization of R & D expenditures—and this is not enough to make out aiding and abetting, as we shall see.

■ In this court for the first time, and therefore too late, the plaintiffs argue that their decision to buy Xonics's stock was influenced by the market price (the private placement was made at a small discount from that price), which in turn had been or may have been influenced by the submissions that the corporation made to the SEC in connection with the proposed registration of stock for sale to other investors, submissions that included Laventhol & Horwath's consent to including the 1982 audit report in the packet. If those submissions in fact influenced the market price and hence the private-placement price, this might affect the plaintiffs' damages if they could show liability, but they could not show liability unless they could show they would not have bought the stock if its price had been lower—a proposition by no means intuitive. At all events, the "fraud on the market" theory, not having been pressed in the district court, is forfeited.

■ There is a deeper problem with the fraud claim. Although the prolix complaint accuses Laventhol & Horwath of having assisted Xonics before the last quarter of Xonics's 1983 fiscal year in improperly capitalizing R & D expenditures, we do not understand the plaintiffs to be complaining of any material falsities in the 1982 audit report itself. They are complaining about Laventhol & Horwath's failure to disclose Xonics's losses following the issuance of the report, and its assisting Xonics in disguising the extent of those losses by the capitalization of R & D expenditures in the last quarter of fiscal 1983. The latter grievance is quite immaterial, because it postdates the plaintiffs' purchase of Xonics stock. The former is immaterial not only because the plaintiffs do not claim to have relied on the report—the report whose roseate predictions the plaintiffs argue should have been corrected when the anticipated profits failed to materialize—and not only because an anticipation of profits is not a representation that there *will* be profits (not all anticipations materialize), but also because the submission of the report to the SEC was accompanied by a full disclosure of Xonics's losses.

■ All that remains is a claim that accountants who participate in or even are merely aware of a fraud by a client have a duty under Rule 10b–5 and the common law of Illinois to broadcast that fraud to anyone who might buy the client's stock. This theory of whistleblower liability or financial good Samaritanism severs accountants' liability from the making of representations. Under it Laventhol & Horwath would be liable to the plaintiffs even if it had never issued an audit report. Rule 10b–5 does not reach frauds that involve no misrepresentations or misleading omissions, see *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473, 97 S.Ct. 1292,

1300, 51 L.Ed.2d 480 (1977), and the particular theory pressed here has no basis that we know of in the common law. It is maintainable if at all only under the rubric of aiding and abetting a Rule 10b–5 misrepresentation, and casts doubt (unnecessary to pursue in this case) on the appropriateness of judicial creativity in borrowing that criminal-law concept for use in securities law.

It is not the law that whenever an accountant discovers that his client is in financial trouble he must blow the whistle on the client for the protection of investors—so that Laventhol & Horwath should have taken out an advertisement in the *Wall Street Journal* stating that it had just discovered that its client Xonics, Inc. was losing money, rather than waiting to report this in the next audit report. That would be an extreme theory of accountants' liability, and it is one we decline to embrace as an interpretation of the common law of Illinois, having in previous cases specifically rejected it as a possible theory of Rule 10b–5 aider and abettor liability. *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 496–97 (7th Cir.1986); see also *LHLC Corp. v. Cluett, Peabody & Co., supra,* 842 F.2d at 932–33; *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1123–26 (5th Cir.1988). There is no actionable nondisclosure without a duty to disclose, and in deciding whether there should be such a duty a court should attend to the practical consequences. Relations of trust and confidence between accountant and client would be destroyed if the accountant were duty-bound to make continuous public disclosure of all the client's financial adversities. And the costs of auditing would skyrocket to compensate the accounting profession for the enormous expansion in potential liability, not to mention the increase in the costs of publication.

Against all this it can be argued that cases in other circuits, expansively construing the judge-made concept of aiding and abetting a Rule 10b–5 violation, have held that an accountant cannot "stand ... idly by while knowing one's good name is being used to perpetrate a fraud," *Ru-*

*dolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1044 (11th Cir.1986); see also *Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646, 652 (9th Cir.1988). Insofar as these cases are inconsistent with our decisions rejecting aider and abettor liability on a whistleblower theory, we respectfully decline to follow them. But they are in fact distinguishable. There is no allegation in this case that Laventhol & Horwath allowed its name to be used to perpetrate a fraud *against these plaintiffs,* who as we have been at pains to stress do not claim to have relied either directly or indirectly on any reports by Laventhol & Horwath in deciding to buy Xonics's stock in a private placement.

The judgment dismissing the entire suit with prejudice is

Affirmed.