**Debra R. GREENBERG, as Trustee of the Debra R. Greenberg UAD 6/10/86 Revocable Living Trust, on behalf of herself and all persons similarly situated, Plaintiff,**

v.

**BOETTCHER & COMPANY, Drovers Bank of Chicago, as Trustee under Land Trust No. 78091, The Treehouse Venture II, and American National Bank & Trust Company of Chicago, Defendants,**

**Village of Schaumburg, Illinois, Nominal Defendant.**

**No. 90 C 3887.**

United States District Court, N.D. Illinois, E.D.

Jan. 3, 1991.

Marshall Patner, Jeremy Worden Hobbs, David Ian Hurwitz, Law Office of Marshall Patner, Chicago, Ill., for plaintiff.

Harry P. Lamberson, David S. Barritt, Chapman & Cutler, Chicago, Ill., for defendant Boettcher & Co.

Roger B. Harris, Barry B. Nekritz, John Kennedy Chatz, Altheimer & Gray, Chicago, Ill., for defendants Treehouse Venture II and Drovers Bank of Chicago.

Jeffrey Todd Gilbert, Maureen A. Mosh, Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, Ill., for defendant American Nat. Bank & Trust Co. of Chicago.

Jack M. Siegel, Wiegel & Warnock, Chicago, Ill., for defendant Village of Schaumburg.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

This is a purported class action instituted by plaintiff Debra R. Greenberg, as Trustee of the Debra R. Greenberg 6/10/86 Revocable Living Trust, ("Greenberg") on behalf of all purchasers of certain municipal mortgage revenue bonds ("the municipal bonds") who held bonds on January 11, 1990. In connection with the bonds' issuance, Greenberg sues various entities for violating the federal securities laws, breach of contract, breach of fiduciary duties and common law fraud. Defendants move to dismiss all charges against them pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant American National Bank & Trust Company of Chicago ("American National Bank") seeks an order requiring Greenberg to pay its reasonable attorneys' fees and costs incurred in moving to dismiss Greenberg's claims under Fed.R.Civ.P. 11.

## BACKGROUND

On a motion to dismiss, the court accepts as true all the well-pleaded factual allegations of the complaint and inferences reasonably drawn from them. *Gomez v. Illinois Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). In considering the sufficiency of Greenberg's amended complaint on this motion to dismiss, the court is limited to the pleadings. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) ("[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Accordingly, the court disregards Greenberg's numerous attempts in her response to buttress the allegations of the amended complaint with additional assertions of fact and new theories of recovery. Only the well-pleaded factual allegations in the amended complaint will be accepted as true in deciding this motion.

### A. *The Municipal Bond Issue*

On December 29, 1982, the Village of Schaumburg, Illinois issued and sold $21,-905,000 of municipal bonds. Amended Complaint ¶ 12. Defendant Boettcher & Company ("Boettcher") underwrote the bonds and published the "official statement" describing the bond issue. *Id.* ¶ 4. Defendant American National Bank & Trust Company of Chicago ("American National Bank"), on behalf of the Village of Schaumburg, used the proceeds of the bond issue to make a non-recourse mortgage loan to defendants Drovers Bank of Chicago ("Drovers") and Treehouse Venture II ("Treehouse") to finance the acquisition of land and construction of a 480 unit multifamily housing project ("the project") in Schaumburg. *Id.* ¶¶ 7, 14, 17. Drovers, acting as trustee, owned the project for the benefit of Treehouse, a limited partnership. *Id.* ¶ 14.

Under the terms of the official statement, the principal and interest payments on the municipal bonds were to be made out of funds received from Drovers and Treehouse under the mortgage agreement. Ex. A at 4, attached to original complaint and incorporated by reference in amended complaint. *See also* Amended Complaint ¶ 15. The non-recourse mortgage was secured by the project itself. Amended Complaint ¶ 18. In addition, the mortgage was insured by the Federal Housing Authority ("FHA") pursuant to § 221(d)(4) of the National Housing Act of 1934. *Id.* at ¶ 19. The official statement provided that in the event Drovers and Treehouse defaulted on their mortgage obligations, American National Bank would assign the mortgage note to the Department of Housing and Urban Development ("HUD") in lieu of

foreclosure. Ex. A at 6. In return, American National Bank would receive the mortgage insurance proceeds. *Id.* American National Bank's receipt of these mortgage insurance proceeds triggered mandatory redemption of the municipal bonds. *Id.* at 13.

The official statement disclosed the risk of mandatory redemption of the bonds in a section entitled "Redemption." Ex. A at 13. The redemption section stated:

> The Bonds are subject to mandatory redemption on any date on or after January 1, 1984 at a redemption price equal to the principal amount thereof, plus accrued interest to the date fixed for redemption, in such manner as may be designated by [American National Bank], as a whole, or in part, *(i) if mortgage insurance proceeds are paid to [American National Bank]* or (ii) if insurance proceeds received as a result of damage to the Project or condemnations awards are applied to the payment of installments on the [mortgage] Note.

*Id.* (emphasis added). *See also* Amended Complaint ¶ 22. The redemption section listed three other events that could trigger mandatory redemption: (i) following final endorsement of the mortgage note by HUD if the principal amount of the note is reduced upon final endorsement by $5,000 or more; (ii) after July 1, 1994, if certain funds are available to redeem the bonds in inverse order of maturity; and (iii) at any time after January 1, 2003, as directed by the Municipal Bond Insurance Association. Amended Complaint ¶ 23. The official statement also disclosed that the bonds were subject to optional redemption by American National Bank beginning January 1, 1993. *Id.* ¶ 24. If the bonds were optionally redeemed between January 1, 1993 and July 1, 1998, bondholders would receive a premium in addition to the principal and accrued interest on the bonds. *Id.*

B. *Purchase and Redemption of the Bonds*

Plaintiff Greenberg purchased municipal bonds for $22,486.40 in August 1988. *Id.*

¶ 9. Greenberg paid a premium over value for her bonds. *Id.* The municipal bonds were scheduled to mature semi-annually from January 1983 to July 2006. *Id.* ¶ 13. However, in January 1990, Drovers and Treehouse defaulted on the mortgage loan "[w]ithout regard to whether or not sufficient funds were available from the [p]roject to pay the principal and interest due under the [mortgage] note. . . ." *Id.* ¶ 26. As required by the documents governing the project's financing, American National Bank assigned the mortgage note to HUD in lieu of foreclosure. *Id.* ¶ 27. As a result, American National Bank received payment of the mortgage insurance proceeds, thus triggering mandatory redemption as described in the official statement. *Id.* ¶¶ 27, 28.

On January 11, 1990, American National Bank mailed to Greenberg and other bondholders notice that the bonds were to be redeemed. *Id.* ¶ 28. Greenberg sold her bonds for a redemption price of $22,384.22. *Id.* ¶ 9. On the same day that American National Bank completed redemption of the bonds, American National Bank financed a new mortgage loan to Drovers and Treehouse by issuing new bonds on behalf of the Village of Schaumburg at rates of interest "advantageous" to Drovers and Treehouse. *Id.* ¶ 29. According to the amended complaint, all of the named defendants except Boettcher collaborated in a scheme to refinance the project at lower rates of interest than those set forth in the original bonds. *Id.* ¶ 29.

C. *Procedural History*

In July 1990, Greenberg initiated this suit against Boettcher, Drovers, Treehouse, American National Bank and the Village of Schaumburg, Illinois.[1] In count I, Greenberg claims that all defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Greenberg bases her securi-

---

1. The Village of Schaumburg is named as a "nominal" defendant. Because it is not charged with liability in any counts of the amended complaint, the Village of Schaumburg is dismissed.

ties fraud claim on alleged misrepresentations and omissions in the official statement issued with the municipal bonds in 1982. In count II, Greenberg charges Drovers, Treehouse and American National Bank with breach of contract, interference with contract, breach of implied duty of good faith, and common law fraud. Count III further asserts that American National Bank breached fiduciary duties to Greenberg and the purported class of bondholders on January 11, 1990.

On October 16, 1990, all defendants moved to dismiss Greenberg's complaint. After receiving defendants' motions to dismiss, Greenberg amended her complaint on October 30, 1990. Defendants now move to dismiss Greenberg's amended complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Defendant American National Bank also requests that the court order Greenberg to pay its reasonable attorneys' fees and costs incurred in moving to dismiss Greenberg's claims.

## DISCUSSION

### I. Motion to Dismiss Under Rule 12(b)(6)

■ Generally, the federal system of notice pleading does not favor dismissal for failure to state a claim. *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988). However, dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to the relief requested. *Illinois Health Care Ass'n v. Illinois Dep't of Public Health*, 879 F.2d 286, 288 (7th Cir.1989), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Similarly, dismissal is in order if the complaint fails to allege a necessary element required to obtain relief. *R.J.R. Services, Inc. v. Aetna Casualty and Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

### A. *Securities Fraud Liability Under Rule 10b–5*

Count I of the amended complaint charges all defendants, by virtue of their involvement in the municipal bond offering, with violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Greenberg asserts primary liability against Boettcher, Drovers and Treehouse; American National Bank is charged with aiding and abetting liability. To establish a primary violation of § 10(b) and Rule 10b–5, Greenberg must demonstrate that the defendants:

(1) in connection with a securities transaction, (2) made an untrue statement of material fact or omitted a material fact that rendered the statements made misleading, (3) with the intent to mislead, and (4) which caused [Greenberg]'s loss.

*Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989). Greenberg contends that the disclosures in the official statement regarding mandatory and optional redemption, when read together and in context, are inadequate, misleading and deceptive in three ways.

First, Greenberg alleges that the official statement failed to fully disclose that the bonds were subject to mandatory redemption without a premium if, for any reason, Drovers and Treehouse defaulted on their mortgage payments. Amended Complaint ¶ 25a. Second, Greenberg alleges that the official statement misleadingly omitted information which would have enabled investors to evaluate the risk of premature redemption caused by a "material adverse change in economic conditions" affecting the project's ability to generate income. *Id.* ¶ 25b. Third, Greenberg claims the disclosures in the official statement regarding the premiums to be paid upon optional redemption created a false impression that the bondholders were protected against the "reinvestment risk" resulting from an early call in the event of a decline in interest rates. *Id.* ¶ 25c.

#### 1. Reliance and Causation

■ Defendants Boettcher, Drovers and Treehouse argue that, regardless whether the official statement contained any material misrepresentations or omissions, Greenberg cannot recover under Rule 10b–5 because her complaint lacks the elements of reliance and causation. As the Seventh

Circuit explained in *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 (7th Cir.1988), in order to recover under Rule 10b–5, a plaintiff must show a causal connection between her decision to buy a security and the defendants' alleged misstatements or omissions. *See also Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1325 (7th Cir.1989) ("[a] fraud that does not affect the decision to make the investment in which the loss complained of is incurred is not actionable under Rule 10b–5"). A plaintiff may establish this causal link by showing that she relied on a defendant's misconduct in selling the security. *Id.*, citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988).[2] Defendants Boettcher, Drovers and Treehouse urge dismissal because Greenberg has not alleged direct or indirect reliance on any misrepresentations or omissions. *See Latigo*, 876 F.2d at 1326 (if plaintiff in fraud case does not rely directly or indirectly on misrepresentations or omissions, plaintiff is not harmed by the fraud).

Greenberg does not claim that she ever received or read the official statement issued in 1982. Thus, she has not alleged direct reliance.[3] Instead, Greenberg alleges that the misrepresentations and omissions in the official statement created a fraud on the market for municipal bonds, causing investors to overvalue the bonds. Amended Complaint ¶ 35. Greenberg claims that because of the misleading official statement, she paid too much for the bonds she purchased in 1988.

In certain circumstances, the fraud on the market theory may give rise to a presumption of indirect reliance by the plaintiff. *Basic*, 485 U.S. at 247, 108 S.Ct. at 991. As the Supreme Court explained:

[t]he fraud on the market theory is based on the hypothesis that, in an *open and developed securities market*, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements...

*Id.* at 241–242, 108 S.Ct. at 988–89 (citation omitted) (emphasis added). The Supreme Court in *Basic* approved the Sixth Circuit's requirement that in order to invoke the fraud on the market presumption, "a plaintiff must *allege* and *prove* ... that the shares were traded on an efficient market...." *Id.* at 248 n. 27, 108 S.Ct. at 992 n. 27 (emphasis added).

The Seventh Circuit has not yet articulated a standard for determining the applicability of the fraud on the market theory. However, lower courts in this and other circuits have consistently cited *Basic* for the proposition that the fraud on the market theory.is only available in cases where the market for the security is well-developed and efficient. *See Freeman v. Laventhol & Horwath*, 915 F.2d 193, 198 (6th Cir.1990) ("fraud on the market theory cannot be applied logically to securities that are not traded in efficient markets"); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1121 (5th Cir.1988) (fraud on the market theory requires "active, efficient secondary market" for subject securities); *Stinson v. Van Valley Dev. Corp.* ("Stinson II"), 719 F.Supp. 362, 363 (E.D.Pa.1989) (threshold requirement for fraud on the market presumption is a showing of an open and developed securities market); *Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 525 (N.D. Ill.1988) ("the question is always whether the stock trades in an efficient market"); *Platsis v. E.F. Hutton & Co. Inc.*, 642

---

**2.** Of course, reliance is not necessary if the plaintiff can otherwise demonstrate a causal connection between her investment decision and the defendants' misconduct. *Rowe*, 850 F.2d at 1233 n. 4.

**3.** Greenberg erroneously asserts that the Seventh Circuit undercut the reliance requirement of Rule 10b–5 in *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522 (7th Cir. 1985). To the contrary, the *Angelos* court expressly recognized the importance of the reliance element. *Id.* at 530 ("[j]ustifiable reliance is ... a limitation on a rule 10b–5 action which insures that there is a causal connection between misrepresentation and the plaintiff's harm") (citation omitted). Furthermore, *Basic* and *Latigo* make clear that the reliance requirement is still an essential part of a Rule 10b–5 claim.

F.Supp. 1277, 1301 (W.D.Mich.1986) (because market for investments in oil and gas limited partnerships is not an open market, it "is not the type of market encompassed by the fraud on the market theory"), *aff'd*, 829 F.2d 13 (6th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988).

The cases clearly require a plaintiff to specifically plead facts that show a well-developed, efficient market. In *Stinson v. Van Valley Dev. Corp. ("Stinson I")*, 714 F.Supp. 132 (E.D.Pa.1989), *aff'd*, 897 F.2d 524 (3d Cir.1990), the court dismissed the complaint for failing to properly allege an efficient market to support a fraud on the market theory. The *Stinson I* court opined:

> the court looks for factual allegations that the bonds were traded in a developed market—a secondary market with a relatively high level of trading activity and for which trading information such as price and volume were readily available.... [Plaintiffs'] claims that the bonds were publicly offered throughout the United States in a diverse market are insufficient to show the sort of open and developed market warranting application of the fraud on the market theory.

*Id.* at 137. In *Cammer v. Bloom*, 711 F.Supp. 1264 (D.N.J.1989), the court listed examples of allegations helpful in meeting the efficient market requirement. The list includes (1) allegations that the securities experienced a large average trading volume during the time period at issue, (2) allegations that a significant number of securities analysts followed and reported on the security, (3) allegations that market makers existed for the security, (4) allegations of empirical facts showing a causal connection between unexpected corporate events or financial releases and immediate response in the stock price. *Id.* at 1286–87.

In this district, Judge Hart permitted plaintiffs to invoke the fraud on the market theory where the stock was traded on the over-the-counter market. *LyphoMed, supra.* In determining that the complaint adequately alleged an efficient market for LyphoMed stock, the court considered important the complaint's allegations that "LyphoMed is a publicly held company with average weekly trading volumes during the class period in excess of one million shares." *Id.* at 525. The court also noted that "over a dozen securities analysts followed and reported on LyphoMed during this period." *Id.* In addition, the court stated:

> [t]he stock had numerous market makers. And, perhaps most significant, LyphoMed is among the companies required by the SEC to file an S–3 Registration Statement. Only corporations whose stocks are actively traded and widely followed use the S–3 form.

*Id.*

In contrast to the specificity of the allegations in *LyphoMed*, Greenberg's amended complaint is bereft of allegations regarding the nature of the market for the municipal bonds she purchased. Indeed, Greenberg's entire effort to invoke the fraud on the market theory is found in her conclusory allegation that "[d]efendants' misrepresentations and omissions regarding mandatory and optional redemption caused investors to overvalue the Bonds, and created a fraud on the market for the Bonds." Amended Complaint ¶ 35. The court need not accept as true this conclusory statement, unsupported by factual allegations.

In her brief, Greenberg attempts (without citing any authority whatsoever) to persuade this court that the secondary market for the municipal bonds at issue is extremely efficient. Greenberg Response at 13–14. Yet, even her brief does not present any facts that tend to show an efficient market for the *particular municipal bonds Greenberg purchased*. Greenberg's brief argues that municipal bonds *in general* trade in efficient markets. Greenberg's only statement concerning the market for her municipal bonds is that "certain professional investors" read the official statement and were misled into overvaluing the municipal bonds. *Id.* at 14. This statement, even if it was found in Greenberg's amended complaint (it is not), would not come close to the necessary allegations of

fact supporting an efficient market theory. Accordingly, Greenberg has not pleaded facts sufficient to invoke the fraud on the market theory. Her complaint therefore fails to allege reliance as required in Rule 10b–5 actions.

Defendants also contend that Greenberg has not alleged any actionable misrepresentations or omissions in the official statement. Because Greenberg's failure to allege reliance and causation requires dismissal, the court need not address whether the official statement contained material misrepresentations or omissions.

### 2. Aiding and Abetting Liability

██ American National Bank, as mortgagee on behalf of the Village of Schaumburg, is charged with aiding and abetting the other defendants' alleged violations of Rule 10b–5. The Seventh Circuit's reticent acceptance of aiding and abetting liability under Rule 10b–5 requires this court to review Greenberg's allegations against American National Bank under strict standards. *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1123 (7th Cir.1990). To hold a party liable for aiding and abetting securities fraud, the Seventh Circuit requires at a minimum that the alleged aider and abettor

(1) commit one of the manipulative or deceptive acts prohibited under section 10(b) and rule 10b–5, (2) with the same degree of scienter that primary liability requires.

*Id. See also Renovitch v. Kaufman*, 905 F.2d 1040, 1045 (7th Cir.1990). Greenberg's amended complaint does not meet even these minimal requirements.

#### a. *Manipulative or Deceptive Acts*

The alleged fraudulent statements appeared in the official statement issued in 1982 in connection with the municipal bond offering. Greenberg's amended complaint utterly fails to link American National Bank with any of the alleged misleading statements in the official statement. The sole allegation referring to American National Bank's wrongdoing states:

[d]efendant American National Bank aided and abetted these federal securities laws violations by calling the Bonds for

redemption [in 1990] without first obtaining judicial approval of the legality thereof in intentional or reckless disregard of the disclosures in the Official Statement and the provisions of the Indenture of Trust.

Amended Complaint ¶ 38. For two reasons, this allegation does not properly charge American National Bank with committing a manipulative or deceptive act prohibited by Rule 10b–5. First, American National Bank's conduct in calling the bonds for redemption was not manipulative or deceptive because neither the official statement nor the indenture of trust required American National Bank to obtain judicial approval before redeeming the bonds. Indeed, Greenberg admits that the documents governing the mortgage and the bond issue required American National Bank to act precisely as it did when Drovers and Treehouse defaulted:

Under the terms of the FHA Mortgage Insurance, [American National Bank] was obligated to assign the [mortgage] Note to ... [HUD] in lieu of foreclosure in the "event of default under the Mortgage Loan," whereupon mortgage insurance proceeds were payable in cash to [American National Bank] for mandatory redemption of the Bonds.

Amended Complaint ¶ 20. Greenberg cites *Harris v. Union Elec. Co.*, 787 F.2d 355 (8th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986), for the proposition that American National Bank should have sought judicial approval before redeeming the bonds after Drovers and Treehouse defaulted. In *Harris*, the indenture trustee refused to call certain mortgage bonds without judicial approval because it questioned the legality of such action. *Id.* at 360. However, the necessity of seeking judicial approval was not at issue in that case. *Harris* neither holds nor implies that an indenture trustee has a duty to seek judicial approval before enforcing a mandatory redemption provision. Greenberg cites no other authority to support the theory that American National Bank acted manipulatively or deceitfully in

redeeming the bonds without seeking prior judicial approval.

Second, the allegedly deceptive official statement was issued in 1982. There are no allegations that American National Bank committed any manipulative or deceptive act in connection with the drafting or issuance of the official statement. Indeed, there are no allegations that American National Bank participated in any way in the bond offering, aside from serving as the mortgagee on the loan to Drovers and Treehouse.[4] In accordance with the documents governing the bond issue, American National Bank called the municipal bonds for redemption in 1990 after Drovers and Treehouse defaulted on the mortgage—over seven years after the official statement was drafted. Thus, there is no nexus between American National Bank's conduct in calling the bonds for redemption and the alleged violations of Rule 10b–5 in connection with the disclosures in official statement. Accordingly, Greenberg has not alleged the requisite manipulative or deceptive conduct for an aiding and abetting claim against American National Bank.

#### b. Scienter

■ Persons may be liable for aiding and abetting under Rule 10b–5 only if they act with scienter, that is, "the intent to deceive, manipulate, or defraud." *Arthur Young & Co.*, 915 F.2d at 1126, quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976). Allegations of reckless conduct are sufficient to meet this standard. *Arthur Young & Co.*, 915 F.2d at 1126. Although Fed.R.Civ.P. 9(b) allows state of mind to be pleaded generally, boilerplate allegations of intent and knowledge are insufficient. *Id.* at 1127; *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). There must be some basis in the complaint for believing that plaintiffs could prove scienter. *Arthur Young & Co.*, 915 F.2d at 1127; *DiLeo*, 901 F.2d at 629. Greenberg's amended complaint alleges only that American National Bank called the bonds for redemption "in intentional or reckless disregard of the disclosures in the Official Statement and the provisions of the Indenture of Trust." Amended Complaint ¶ 38. The amended complaint does not provide any basis for inferring that American National Bank possessed the intent to deceive required for aiding and abetting liability.[5]

Greenberg has failed to meet even the minimum requirements for pleading aiding and abetting liability. Accordingly, Greenberg's claims against American National Bank are dismissed.

### B. Statute of Limitations

■ Defendants assert that Greenberg's securities fraud claims are time-barred. Several weeks after Greenberg filed her complaint, the Seventh Circuit adopted Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m, as the applicable limitations period for claims arising under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990), *petition for cert. filed,* (Sept. 26, 1990) (No. 90–526). Rule 10b–5 actions must now be filed within one year of the date that a reasonable investor knew or should have known of the claim, but in no event later than three years after the date the security

---

**4.** Greenberg's brief attempts to bolster the meager allegations against American National Bank by stating that "American National [Bank] participated—to what extent plaintiff can not know without discovery—in the drafting of the Indenture of Trust and Official Statement." Greenberg Response at 18. These allegations do not appear in the amended complaint; the court will not consider them. Moreover, "Rule 11 requires counsel to do legal research before filing [a complaint] ... A party may not strike out blindly and rely on its opponent to do the research to make the case or expose its falla-

cies." *Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1064 (7th Cir.1987) (citations omitted).

**5.** The court disregards Greenberg's assertion in her brief that American National Bank received additional fees for redeeming the bonds and refinancing the mortgage loan to Drovers and Treehouse. *See* Greenberg Response at 18. The amended complaint does not contain these allegations. *Car Carriers,* 745 F.2d at 1107.

was sold. 15 U.S.C. § 77m. Equitable tolling principles do not extend the period of limitations beyond the three-year absolute limit. *Short,* 908 F.2d at 1391.

The Seventh Circuit has not yet determined whether the new limitations rule should be applied retroactively to all Rule 10b–5 claims. However, after considering the three factors germane to determining whether to apply a new rule retroactively, this court retroactively applied *Short*'s holding to Rule 10b–5 claims in *In re VMS Securities Litigation,* 752 F.Supp. 1373, 1388 (N.D.Ill.1990).[6] As in Greenberg's case, the plaintiffs in *In re VMS* were unaware of the alleged misrepresentations until a short time before filing suit. They therefore could not have delayed filing suit in reliance on the old period of limitations. *Id.* at 1388. In addition, retroactive application furthers the purposes of the new limitations rule by eliminating the cumbersome analysis required by the old rule. *Id.* at 1388. Pursuant to the reasoning in *In re VMS,* the court finds that the new period of limitations governs Greenberg's Rule 10b–5 claim.[7]

Defendants argue that Greenberg's claims are precluded because more than three years have elapsed since the official statement was published and the bonds were issued in 1982. Greenberg asserts that her claim is timely even under the new period of limitations, because she filed suit within one year of discovering the alleged fraud, and within three years of her purchase in 1988. Thus, whether Greenberg's claims are time-barred depends on when the three-year period of limitations began to run. After considering the parties' arguments and the relevant authorities, the court is persuaded that the three-year outer limit began in 1982 when the bonds and the accompanying official statement were issued.

When the Seventh Circuit decided to apply the limitations period of § 13 in *Short,* it was strongly influenced by the fact that § 13 imposes a three-year period of repose. *Short,* 908 F.2d at 1391 ("[o]ne interest cuts strongly in favor of § 13: it is a period of repose"). A period of repose bars a suit a fixed number of years after an action by the defendant, even if this period ends before the plaintiff suffers any injury. *Beard v. J.I. Case Co.,* 823 F.2d 1095, 1097 n. 1 (7th Cir.1987). Periods of repose are intended to "let [defendants] go about their business, after a definite time, untroubled by fear of being sued." *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1527 (7th Cir.1990). The policy underlying the recently-adopted three-year period of repose for Rule 10b–5 claims would be seriously undermined if Greenberg were allowed to file her suit nearly eight years after defendants allegedly made deceptive statements in the official statement. Defendant Boettcher persuasively points out the anomalous result of Greenberg's position. Under Greenberg's theory, an underwriter of a security who allegedly made misrepresentations at the time the security was issued would be exposed to liability for an indefinite period of time. Boettcher Reply at 2. The original purchaser of the security would be barred from filing suit three years after the allegedly misleading information was disseminated. But according to Greenberg's theory, if the original purchaser then re-sold the security on the secondary market, the new purchaser (like Greenberg) would be entitled to a fresh three-year period of limitations beginning on the date the second purchaser bought the security. In effect, the underwriter would never be relieved of the possibility of being sued, because each re-sale of the security would "breathe new life" into claims that would have been barred by the three-year limitations period. *Id.* This

---

**6.** The three factors are: (1) whether the new rule overrules clear past precedent on which litigants may have relied; (2) whether retroactive application of the new rule will further or retard its operation; and (3) whether retroactive application would impose injustice or hardship. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971).

**7.** Significantly, Greenberg offers no argument against retroactive application except to say that "it is not certain that *Short* should be retroactively applied to this case." Greenberg Response at 15 n. 5.

court cannot conclude that the Seventh Circuit intended this peculiar result when it adopted § 13's period of repose.

Accordingly, the court holds that the period of limitations on the alleged misrepresentations in the official statement began to run on December 1, 1982 when the statement was issued. The three-year period of repose expired on December 1, 1985. Greenberg's claims under Rule 10b–5 are time-barred.

Because Greenberg's securities fraud claims must be dismissed under Fed.R. Civ.P. 12(b)(6), the court need not determine whether dismissal is also warranted under Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. Additionally, because Greenberg's federal claims are dismissed, the court declines to reach the issues posed by the pendent state law claims in counts II and III. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## CONCLUSION

The motions to dismiss Greenberg's amended complaint are granted as to all defendants. This action is dismissed with prejudice. Defendant American National Bank's request for attorneys' fees and costs under Fed.R.Civ.P. 11 is referred to a magistrate.