Bobby S. SIMPSON, etc.

v.

SPECIALTY RETAIL CONCEPTS, et al.

No. C–88–100–WS.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Jan. 14, 1993.

See also, 121 F.R.D. 261, 149 F.R.D. 94.

Martha A. Geer, Raleigh, NC, for plaintiff.

Norman L. Sloan, George S. Thomas, Wesley Bailey, Stephen M. Russell, Winston–Salem, NC, James T. Williams, Jr., Robert A. Singer, Mack Sperling, Greensboro, NC, John Van Zandt, III, Weston P. Hatfield, Winston–Salem, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

This case is before the Court on Defendant Deloitte, Haskins & Sells ("DH & S") motion for summary judgment. Having considered those issues necessary for a ruling on the Plaintiff's motion for class certification, the Court DENIES Defendant DH & S's motion

for summary judgment with respect to Plaintiff's fraud on the market theory.

The principles for granting summary judgment are well settled. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If there are any inferences to be drawn from the underlying facts, the Court must view these in the light most favorable to the non-moving party. *Catawba Indian Tribe of South Carolina v. South Carolina,* 978 F.2d 1334 (4th Cir.1992) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Because the standard for considering a motion for summary judgment mirrors the standard for what traditionally has been known as a "directed verdict," [1] the standard can also be expressed as follows: "whether, viewing the evidence in the light most favorable to the non-moving party and giving him the benefit of all reasonable inferences, there is sufficient evidence in the record to support a jury verdict in his favor." *Herold v. Hajoca Corp.,* 864 F.2d 317 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). Applying the summary judgment standard to Defendant's argument that the fraud on the market theory of reliance should not be available, the Court concludes that summary judgment would not be appropriate.

■ At issue is whether Plaintiff and the purported class he seeks to represent can avail themselves of the fraud on the market theory of reliance as approved in *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The fraud on the market theory of reliance obviates the need for a securities fraud plaintiff to prove actual individual reliance, replacing the requirement with a *presumption* of reliance. *See Basic,* 485 U.S. at 241–42, 108 S.Ct. at 989. In order for a plaintiff to be entitled to the presumption of reliance, plaintiff must allege and prove, among other things, that the securities in question traded in an efficient market. *Id.* at 248, n. 27, 108 S.Ct. at 992, n. 27.

■ Defendant DH & S in its motion for summary judgment and its motion against class certification has argued that the market for Specialty Retail Concepts, Inc. ("SRC") stock was not an efficient market, thereby eliminating the potential application of the theory from Plaintiff's case. The Fourth Circuit has not yet addressed the criteria to be considered when determining whether a particular market qualifies as "efficient." In its motion, Defendant DH & S urges the Court to adopt the five-pronged test for efficient markets outlined in *Cammer v. Bloom,* 711 F.Supp. 1264 (D.N.J.1989). Other courts have cited the *Cammer* test with approval. *See Hayes v. Gross,* 982 F.2d 104, n. 1 (3d Cir.1992) (noting *Cammer*'s thorough analysis of whether plaintiff showed specific facts indicating an efficient market in ruling on a motion for summary judgment); *Greenberg v. Boettcher & Co.,* 755 F.Supp. 776, 782 (N.D.Ill.1991). *See also,* Russell Robinson, "Fraud-on-the-Market Theory and Thinly–Traded Securities Under Rule 10b–5: How Does a Court Decide if a Stock Market is Efficient?" 25 *Wake Forest L.Rev.* 223, 243–47 (1990). This court finds the *Cammer* factors instructive and will follow its lead.

■ In *Cammer,* the court considered the efficiency of the market in ruling on a motion for summary judgment. The court rejected a bright-lined test of efficiency based solely on the market in which the stocks traded and instead suggested a five-pronged test for market efficiency. As the *Cammer* court stated, "[t]he central question under the fraud on the market theory is whether the stock price, *at the time a plaintiff effected a trade,* reflected the 'misinformation' alleged to have been disseminated." *Cammer,* 711 F.Supp. at 1282. The *Cammer* court went on to analyze the particular stock in question in relationship to five factors indicative of efficiency during the class period. Those five factors are as follows:

(1) A substantial average weekly trading volume; [2]

---

**1.** The concept is now termed as "judgment as a matter of law." *See* Fed.R.Civ.P. 50(a).

**2.** The *Cammer* opinion cited Bromberg & Lowenfels, 4 *Securities Fraud and Commodities Fraud,* § 8.6 (Aug. 1988) for the position that turnover

(2) a significant number of securities analysts who follow and report on a company's stock;

(3) the existence of numerous market makers for the stock;[3]

(4) the company's entitlement to file an S–3 Registration Statement in connection with its public offerings; and

(5) empirical facts showing a "cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price."

*Cammer,* 711 F.Supp. at 1286–87.

■■■ It is not necessary that a stock satisfy all five factors in order for the market in that stock to be efficient. *Id.* at 1287 (rejecting bright line tests, such as ineligibility to file an S–3 Registration Statement). Furthermore, while the *Cammer* factors are instructive, they are by no means exhaustive. As Plaintiff has the burden of proving market efficiency before being entitled to the presumption of reliance, Plaintiff may wish to present other evidence of market efficiency at trial.[4]

■■■ Taken in the light most favorable to the plaintiff, the Court finds the evidence in the record at this time to show the following facts. During the proposed class period, SRC stock was publicly traded over-the-counter on the National Association of Securities Dealers Automated Quotation System (NASDAQ). SRC had 1,865,149 shares outstanding and approximately 600 shareholders. The average weekly trading volume in SRC stock was somewhat less than 14,000 shares, which amounted to approximately .75% of the outstanding shares. At least three securities analysts reported on SRC stock. At least six firms acted as market makers for SRC stock during 1986 and 1987, although not all at the same time during those years.[5] Finally, SRC was unable to file an S–3 Registration Statement.

Although the facts recited above tend to support the conclusion that the market for SRC stock was not efficient or information hungry, the court cannot conclude that no genuine issue of material fact exists entitling DH & S to judgment on the efficient market issue as a matter of law. Stated in another way, there is enough evidence in the record to support a jury's finding that the market for SRC stock at the relevant time was efficient. For example, the average weekly trading volume of SRC stock was .75% of outstanding shares. While this figure does not reach the mark of one percent of outstanding shares cited by treatises, it may still be indicative of some degree of market efficiency. The existence of six market makers, combined with other factors, may lead a jury to conclude that the market for SRC stock operated efficiently. The price of SRC stock experienced a dramatic drop after media coverage of DH & S's withdrawal as SRC's auditor, thus supporting the view that there was a cause and effect relationship between corporate events and the stock price.[6] Furthermore, the record suggests that corporate events at SRC were consistently reported both in the *Wall Street Journal* and the local media.

■■■ On a final note, Plaintiff argues in his memorandum of law in opposition to summary judgment that he and purported class

measured by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one, while one percent would justify a substantial presumption. 711 F.Supp. at 1286.

3. The Bromberg treatise suggests that ten or more market makers leads to a strong presumption that the market operated efficiently, while five market makers indicates a more modest presumption of efficiency. Bromberg & Lowenfels, 4 *Securities Fraud and Commodities Fraud,* § 8.6 (Aug. 1988).

4. For a suggestion of factors indicative of market efficiency, see Russell Robinson, "Fraud-on-the-Market Theory and Thinly–Traded Securities Under Rule 10b–5: How Does a Court Decide if a Stock Market is Efficient?" 25 *Wake Forest L.Rev.* 223, 248–51 (1990).

5. A market maker includes dealers who hold themselves out as willing to purchase and sell a particular security for their own account "on a regular or continuous basis." Hazen, *The Law of Securities Regulation,* § 10.3, p. 530 (1990).

6. The fifth *Cammer* factor is perhaps the most important one. *See Cammer,* 711 F.Supp. at 1287.

members are entitled to the presumption of reliance outlined in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The rebuttable presumption of reliance provided in *Affiliated Ute* is a narrow one, designed for the special problem that arises when there are omissions rather than material misrepresentations. Because of the difficulty of proving reliance on information never provided by one with a duty to so provide, the Court in *Affiliated Ute* held that a plaintiff in such a case had to prove only that the omissions were material. *Id.* at 153–54. While Plaintiff is not the first to try to take advantage of the *Affiliated Ute* presumption, Plaintiff's case is not entitled to such a presumption because it is clearly a material misrepresentation case. Plaintiff's attempt to style the complaint as "misrepresentations and omissions" does not change the underlying nature of the action.[7]

For the foregoing reasons, Defendant DH & S's motion for summary judgment is DENIED as to Plaintiff's fraud on the market theory.

---

7. Through word games, every plaintiff can style his or her complaint as a material misrepresentations or omissions case. Indeed, every misrepresentation involves an omission of the true information. However, if all cases could be so characterized, there would be no need for the fraud on the market theory presumption of reliance. Furthermore, there is a clear distinction between an allegation of material misrepresentation versus an omission. The first involves an affirmative act of representing, although incorrectly, while the latter involves no act or representation at all. Plaintiff's complaint clearly fits into the first category.