**Sidney MORSE, Plaintiff,**

v.

**ABBOTT LABORATORIES, Robert A. Schoellhorn, Duane L. Burnham, Thomas R. Hodgson, Theodore A. Olson, Jack W. Schuler, and Charles J. Aschauer, Jr., Defendants.**

**No. 90 C 1982.**

United States District Court, N.D. Illinois, E.D.

Feb. 14, 1991.

---

Jules Brody, Stull, Stull & Brody, New York City, Robert D. Allison, Chicago, Ill., Stuart Wechsler, Andrew Davidovits, Wechsler, Skirnick, Harwood Halebian, New York City, for plaintiff.

H. Roderic Heard, John E. Frey, Brian W. Lewis, Martin B. Carroll, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Abbott Laboratories, Duane L. Burnham, Thomas R. Hodgson, Theodore A. Olson, Arthur E. Rassmussen, Jack W. Schuler, James F. Bere, Laurance H. Fuller, William D. Smithburg, Charles J. Aschauer, Jr., Joseph V. Charyk and William L. Weiss.

John H. Mathias, Jr., Terri L. Mascherin, Jenner & Block, Chicago, Ill., for Robert A. Schoellhorn.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Sidney Morse brought this class action pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), Rule 10b–5 promulgated thereunder, and the common law claims of fraud and negligent misrepresentation alleging that Abbott Laboratories, an Illinois corporation, and six directors and/or officers of Abbott ("defendants") failed to disclose material adverse information concerning Abbott.

## FACTS

The facts according to the first amended class action complaint are as follows: On July 5, 1989, the Food and Drug Administration (FDA) commenced an inspection of Abbott's pharmaceutical facilities in North Chicago, Illinois. (¶ 25.) The inspection, which lasted until November 3, 1989, uncovered serious unsanitary conditions which violated the health and safety rules and regulations of the FDA. (*Id.*) The FDA issued a report on November 3, 1989,

which enumerated fifty-six citations in connection with the four month inspection. (*Id.*) Abbott's response to the FDA findings was deemed "insufficient" by the FDA. (¶ 28.) Thereafter, the FDA imposed regulatory sanctions on Abbott. The sanctions barred Abbott from selling the affected products to any federal agency and precluded Abbott from receiving approval for any New Drug Applications or Abbreviated New Drug Applications regarding the affected products until adequate corrective action was taken. (¶¶ 26, 28.) None of Abbott's public statements issued during the alleged class period (February 21, 1989 through March 20, 1990) disclosed this information. (¶ 29.) Two of the statements included notes acknowledging the comprehensive government regulation that Abbott operates under and the types of regulatory actions which the government has the power to impose. (¶¶ 30, 35.) There was no discussion, however, of the FDA inspection of the North Chicago facility. Abbott's violations were not made public until a stock analyst obtained the FDA report pursuant to a Freedom of Information Act request. (¶ 38.)

## DISCUSSION

### I. COUNT I: SECTION 10(b) AND RULE 10b–5

#### A. Sufficiency of Facts Alleging Fraud

■ Defendants argue that Morse has failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). (Mem. in Support, p. 4.) Defendants rely on *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990), for the proposition that a plaintiff alleging fraud cannot simply point to the difference in a firm's condition as reflected by two financial statements, but instead must point to some facts suggesting that the downturn in the firm's condition is attributable to fraud. *Id.* at 627. In light of *DiLeo*, defendants argue that Morse's allegations only point out that Abbott issued financial reports which did not disclose the alleged violations of FDA regulations, and that later the alleged violations came to light. (Mem. in Support, p. 5.) "From this plaintiff makes the inference, forbidden by *DiLeo*, that defendants' fraud accounts for the earlier nondisclosure." (*Id.*)

In *DiLeo*, the plaintiff alleged that the auditors of Continental Illinois Bank did not increase the Bank's reserves for non-performing loans fast enough when the auditors became aware that a substantial amount of the loans were uncollectible. *DiLeo*, 901 F.2d at 626. Judge Easterbrook found nothing in DiLeo's complaint other than the change in the condition of the firm to suggest that the auditors were even negligent. *Id.* at 628. "Rule 9(b) required the district court to dismiss the complaint, which discloses none of the circumstances that might separate fraud from the benefit of hindsight." *Id.*

Morse's complaint goes beyond merely describing financial reports that do not disclose the FDA violations. The complaint details the inspection of Abbott facilities by the FDA from July 5, 1989 to November 3, 1989, and the fifty-six citations that resulted therefrom. (Complaint, ¶ 25.) The complaint describes the serious sanctions imposed by the FDA after Abbott failed to respond to the violations. (*Id.*, ¶ 26.) In light of these allegations, Morse's description of financial reports, issued during the relevant period and lacking disclosure of the FDA actions, can be seen as "suggesting that the [nondisclosure] is attributable to fraud."

Unlike *DiLeo*, there is no issue of hindsight; Defendants were clearly in a position to know about the FDA violations and sanctions before certain financial statements were filed,[1] and it is undisputed that

---

1. Such knowledge is confirmed by their statements in financial reports explaining the potential for severe penalties imposed by government agencies in the highly regulated pharmaceutical industry. For example, one insertion in Abbott's annual report for the year ended December 31, 1989 states:

The development, manufacture, sale, and distribution of the Company's products are subject to comprehensive government regulation, and the general trend is toward more stringent regulation.... Government regulatory actions can result in the seizure or recall of products, suspension or revocation of the au-

such violations were not disclosed in the statements. This is sharply different than the situation in *DiLeo* in which the complaint alleged that financial statements did not adequately reserve for loans that are likely to become uncollectible in the future. In the instant case, there was no speculation. The violations had already occurred and the sanctions had already been imposed. Hindsight is irrelevant in such a situation. Also unlike *DiLeo*, the individual defendants, all directors and/or senior officers, have incentive to withhold disclosure of material information which would have an adverse effect on Abbott. These facts, expressly missing in *DiLeo*, "afford a basis for believing that plaintiffs could prove scienter." *DiLeo*, 901 F.2d at 629.

The court concludes that the complaint alleges facts which, if true, establish that defendants acted consciously to defraud investors. The complaint describes a situation in which a corporation and its "insiders" realized the significance of FDA sanctions, know about FDA inspections of their facilities, the violations uncovered and the sanctions imposed, and do not thereafter disclose this material information on SEC filings. To require greater detail of the alleged fraudulent scheme at this time would be tantamount to allowing only those with inside information to bring suit. This is especially true where the heart of the alleged fraud lies with material omissions, a type of fraud which is evidenced by the absence, rather than the presence, of express fraudulent conduct. Thus, the court finds that Morse's first amended complaint notifies defendants of the nature of his rule 10b–5 claim by briefly alleging how the fraudulent scheme operated, when and where it occurred, and the participants. *See Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975).

### B. Individual Culpability

■ Defendants argue that Morse's complaint fails "to specify what role each defendant allegedly played in the purported fraudulent scheme. Instead, the complaint lumps all of the defendants together...." (Mem. in Support, p. 6.) However, in cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987); *Latimer v. Hall Financial Group, Inc.*, 1990 WL 133225, 1990 U.S.Dist. LEXIS 12028 (N.D.Ill.1990). Furthermore, Morse has named only those individuals who signed the 10–K and 10–Q statements in which the FDA information was omitted. The individual defendants are alleged to be in corporate positions which ordinarily bear responsibility for financial statement preparation and submission. Once again, requiring Morse to have knowledge of the specific role played by each individual defendant in the alleged fraud effectively bars suits brought by investors who are not privy to the inner workings of corporate management. Rule 10b–5 was not intended to have such a stifling effect on the large number of investors in today's securities markets who are significantly distanced from the operations of the corporations in which they have invested.

### C. Aiding and Abetting and Conspiracy Claims

■ In Morse's complaint, he advances three theories in support of a finding of a Rule 10b–5 violation. (Complaint, ¶ 45.) One of those theories, that defendants directly violated the Rule, has been discussed above. The complaint also appears to allege aiding and abetting and conspiracy liability for violations of Rule 10b–5. Defendants challenge these two theories based on insufficiency of the allegations. However, Morse does not respond to these challenges. The court interprets this response, or lack thereof, as an indication that Morse desires to pursue Count I as a direct violation of Rule 10b–5, and not under aiding and abetting or conspiracy theo-

thority necessary for their production or sale, and other civil and criminal sanctions.

Complaint, ¶ 35.

ries. Accordingly, the court construes Count I as alleging only a direct violation of Rule 10b–5.

## II. COUNT II: SECTION 20(a)

■ Defendants assert that Count II of Morse's amended complaint alleging violations of Section 20(a) of the 1934 Act is redundant of the Section 10(b) and Rule 10b–5 allegations of Count I. Accordingly, defendants urge the court to dismiss Count II under Fed.R.Civ.P. 12(f). (Mem. in Support, p. 9.)

Defendants cite no cases in support of the existence of redundancy between these two sections of the 1934 Act. Section 20(a) imposes joint and several liability on persons who directly or indirectly control a violator of securities laws. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). Courts have found corporate officers liable under Section 20(a) when their corporation has violated securities laws, such as Rule 10b–5. *See, e.g., Wool*, 818 F.2d at 1440–42. Accordingly, the court will not dismiss Count II as redundant of Count I.

## III. COUNT III: COMMON LAW CLAIMS

■ Claims for common law fraud and negligent misrepresentation require a showing of actual reliance. *Cf. Trautman v. Knights of Columbus*, 121 Ill.App.3d 911, 77 Ill.Dec. 294, 296, 460 N.E.2d 350, 352 (1st Dist.1984); *Board of Education v. A, C & S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). In regards to this element, Morse's complaint states that

> Plaintiff and other members of the Class relied on the misleading statements, in ignorance of their falsity, and/or on the integrity of the market when they purchased Abbott common stock. Plaintiff and other members of the Class would not have purchased Abbott common stock at the prices they paid, if at all, had they been aware of the misleading nature of defendants' public statements.

(Complaint, ¶ 48.) Morse points to no cases which apply the "fraud on the market"

theory to these state claims. Under Fed.R. Civ.P. 9(b), Morse is required to allege actual reliance with particularity. In this respect, the above allegation is insufficient. As correctly stated by defendants, Morse's complaint is void of allegations that Morse or anyone in the class actually read any of the misleading reports or even knew of their existence. Instead, the complaint only states a conclusion that actual reliance existed. Since such allegation fails the particularity requirement of Rule 9(b), Count III must be dismissed.

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss the first amended class action complaint is DENIED with respect to Counts I and II, and GRANTED with respect to Count III. The parties are urged to discuss settlement of this case.