Dorothy KAS, Plaintiff,

v.

CATERPILLAR, INC., G.A. Schaefer, D.V. Fites, L.A. Kuchan, J.W. Kenning, and C.E. Rager, Defendants.

Eric MARGOLIS, Plaintiff,

v.

CATERPILLAR, INC., George A. Schaefer, Donald V. Fites, Len A. Kuchan, John W. Kenning, Charles E. Rager, Defendants.

Nos. 90–1238, 90–1242.

United States District Court, C.D. Illinois.

March 30, 1992.

Richard Schiffrin, Schiffrin & Craig Ltd., Buffalo Grove, IL, Lee Squitieri, Abbey & Ellis, New York City, for plaintiff.

Theodore R. Johnson, Caterpillar, Inc., Peoria, IL, Michael D. Torpey, W. Reece Bader, Orrick Herrington & Sutcliffe, San Francisco, CA, for defendants.

## ORDER

MIHM, Chief Judge.

Before the court is Defendant's Motion to Dismiss for Failure to Adequately Allege Scienter pursuant to Federal Rule of Civil Procedure 9(b) and Defendant's Motion to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons set forth below, the court denies Defendant's Scienter Motion to Dismiss and grants in part and denies in part Defendant's 9(b) and 12(b)(6) Motion to Dismiss.

## JURISDICTION

Plaintiffs have brought this action pursuant to § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5), § 20 of the Securities Exchange Act (15 U.S.C. § 78t) and state law. This court has jurisdiction of this action pursuant to § 27 of the Securities Exchange Act (15 U.S.C. § 78aa) and pendent jurisdiction over the state law claims.

## BACKGROUND

This is a security holders' class action on behalf of all persons, other than Defendants, who purchased or otherwise acquired the common stock of Caterpillar, purchased call options for Caterpillar common stock, or who sold or otherwise disposed of the put options for Caterpillar common stock between January 19, 1990 and June 26, 1990 (the "Class Period"). On June 25 and 26, 1990, Caterpillar stock dropped a total of $11 (20% of its market value) for an aggregate market loss of over $1 billion upon the disclosure of news that Caterpillar's second quarter net income would be lower than first quarter net income and would only constitute approximately 56% of Caterpillar's net income for the same period a year ago.

Plaintiffs allege in their Second Amended Complaint that the dramatic price drop resulted from the revelation of material facts which Defendants had previously concealed and which rendered their prior statements, via press releases, interviews, filings with the Securities and Exchange Commission, and annual and quarterly reports to shareholders, false and misleading. These alleged omissions and/or misrepresented facts included statements in connection with a plant renovation program called "Plant With a Future" (PWAF), a reorganization plan announced in January of 1990 referred to as the "January Reorganization," and the status of Caterpillar's Brazilian operations in the face of tremendous economic disruption in that country due to the effects of hyperinflation and economic policies which the new Brazilian administration implemented on March 16, 1990 in an effort to stabilize the Brazilian economy.

I. *Defendant's Dispositive Motion to Dismiss for Failure to Adequately Allege Scienter Pursuant to Federal Rule of Civil Procedure 9(b).*

In their Second Amended Complaint ("complaint"), Plaintiffs allege that Caterpillar violated § 10(b) and Rule 10b–5 by making fraudulent misrepresentations and omissions regarding Caterpillar's financial condition during the relevant class period. The issue before the court is whether Plaintiffs adequately pleaded the essential element of scienter in their § 10(b) action in order to meet the requirements of Federal Rule of Civil Procedure 9(b).

A district court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Scola v. Comdisco, Inc.*, 1991 WL 93268 at *1 (N.D.Ill., May 22, 1991), citing *R.E. Davis Chemical Corp. v. Diasonics, Inc.*, 826 F.2d 678, 684–85 (7th Cir.1987). "In making this determination, the court must accept as true all well-pleaded facts in the complaint and all inferences which may reasonably be drawn from them." *Scola*, 1991 WL 93268 at *1, citing *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988).

Plaintiff alleges that Caterpillar violated § 10(b), which prohibits any person from using or employing "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security, 15 U.S.C. § 78j(b), and Rule 10b–5, which makes it unlawful for any person, in connection with the purchase or sale of a security:

> (a) To employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the United States Supreme Court ruled that the "intent to deceive, manipulate, or defraud," e.g., scienter, was required to establish a violation under § 10(b) and Rule 10b–5. 425 U.S. at 194, n. 12, 96 S.Ct. at 1381, n. 12. In *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir.1977), the Seventh Circuit expanded the element of scienter to include a "reckless omission of material facts upon which the plaintiff put justifiable reliance in connection with the sale or purchase of securities ..." 553 F.2d at 1044. In *Sundstrand*, the Seventh Circuit applied an objective standard for recklessness articulated by the court in *Franke v. Midwestern*

*Oklahoma Development Authority*, 428 F.Supp. 719 (W.D.Okla.1976):

> [r]eckless conduct may be defined as a highly unreasonably omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

Per the *Franke* definition, the *Sundstrand* court stated that:

> [t]he danger of misleading buyers must be actually known or so obvious that any reasonable man would be legally bound as knowing, and the omission must derive from something more egregious than even "white heart/empty head" good faith.

553 F.2d at 1045. In *Sanders v. John Nuveen & Co.*, 554 F.2d 790 (7th Cir.1977), the Seventh Circuit further defined what constituted reckless:

> [t]he definition of "reckless behavior" should not be a liberal one lest any discernible distinction between "scienter" and "negligence" be obliterated for these purposes. We believe "reckless" in these circumstances comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence. We perceive it to be not just a difference in degree, but also in kind.

554 F.2d at 793.

The scienter element in a § 10(b) cause of action is subject to Federal Rule of Civil Procedure 9(b) which states in part that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Second Circuit has described the purpose of this rule to be the following:

> (1) To provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or good will, and (3) to reduce the number of strike suits.

*Cosmas v. Hassett*, 886 F.2d 8, 11 (2nd Cir. 1989), citing *Stern v. Leucadia National Corp.*, 844 F.2d 997, 1003 (2nd Cir.), *cert.*

*denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

The leading Seventh Circuit case regarding the requirement for pleading scienter is *DiLeo v. Ernst and Young,* 901 F.2d 624 (7th Cir.1990). In *DiLeo,* the court refers to the "particularity" requirement of Rule 9(b) by stating:

> [a]lthough states of mind may be pleaded generally, the "circumstances" must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.

901 F.2d at 627. The *DiLeo* court was particularly concerned with the disclosure of circumstances that would separate fraud from the benefit of hindsight. *Id.* at 628. In that case, the plaintiff claimed that Continental Bank's auditors had violated Rule 10b–5 by certifying fraudulent financial statements and aiding and abetting the primary violator, the Bank. *DiLeo,* 901 F.2d at 626. The Seventh Circuit affirmed the district court's dismissal of the complaint after plaintiff failed to plead any facts by which the court could infer fraud and distinguish that inference from what appeared to be an accounting firm's failure to recognize that the Bank's loan reserves needed to be increased. Plaintiff failed to allege why this need should have been apparent sooner and why failure to increase the reserves amounted to fraud. Under the aider and abettor theory, plaintiff failed to establish how the accounting firm had a duty to disclose this information or how it had the requisite scienter, given that the complaint contained no direct or circumstantial evidence of scienter. Given the facts of that case, the court found that defendants had nothing to gain from the deceit and therefore no credible motive. 901 F.2d at 629.

■ Scienter must be pleaded in one of three ways. First, a plaintiff may plead direct evidence of scienter. *Renovitch v. Kaufman,* 905 F.2d 1040, 1046 (7th Cir.1990). If the plaintiff fails to produce direct evidence, the court should examine whether there is indirect evidence of scienter by considering whether the fraud was in the interest of the defendants or whether the defendants had a motive to defraud. *See Renovitch,* 905 F.2d

at 1046; *DiLeo,* 901 F.2d at 629; *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 497 (7th Cir.1986); *In re First Chicago Corp. Secur. Litigation,* 769 F.Supp. 1444, 1455 (N.D.Ill.1991). Third, if plaintiff fails to demonstrate the possibility of motive or self-interest, he must demonstrate scienter by alleging circumstances which provide a factual foundation for otherwise conclusory allegations of scienter. *Kas v. Chase Manhattan Bank, N.A.,* CCH Fed.Sec.L.Rep. ¶ 95,381 at 96,864, 1990 WL 113185 (S.D.N.Y. 1990). These factual allegations "must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent." *Id.,* citing *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2nd Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). If the fraud alleged does not appear to contain a motive or if the motive appears to be irrational, plaintiffs must make a very strong showing of other circumstances of scienter. *DiLeo,* 901 F.2d at 629.

■ In their motion to dismiss, Defendants argue that Plaintiffs' allegations of scienter are "boilerplate," conclusory, and insufficient to satisfy the standards set by the Seventh Circuit and Rule 9(b). Defendants allege that in the absence of direct evidence, Plaintiffs have failed to provide evidence of motive to defraud or other circumstantial evidence which raises a strong inference of fraud.

Defendants allege that the Seventh Circuit has affirmed that boilerplate and conclusory allegations of scienter will not suffice. *Robin v. Arthur Young & Company,* 915 F.2d 1120, 1127 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991) (court held that assertions that the defendant had knowledge of the misstatements "are nothing more than rote conclusions"); *DiLeo v. Ernst and Young,* 901 F.2d at 629 (court held that "rote conclusions" and "boilerplate" do not suffice); *First Chicago,* 769 F.Supp. at 1454 (court held that conclusory allegations "will not satisfy Rule 9(b)").

In response, Plaintiffs argue that Rule 9(b) itself explicitly states that the "condition of mind of a person may be averred generally." *See Carter v. Signode Industries, Inc.,* 694

F.Supp. 493, 500 (N.D.Ill.1988) (plaintiffs need only describe the outline of the fraudulent scheme and need not set forth facts which, because discovery has not been completed, are in the exclusive possession of defendants); *Reshal Assoc. Inc. v. Long Grove Trading Co.*, 754 F.Supp. 1226 (N.D.Ill.1990) (The court ruled that the circumstances constituting fraud must be pleaded in detail, not the circumstances constituting the state of mind). Plaintiffs also cite *Coe v. Circle Express, Inc.*, 1991 WL 34626 (N.D.Ill., Mar. 12, 1991), where plaintiffs alleged that defendants were insiders and officers of the company, knew the representations and omissions in the relevant document and recklessly disregarded their inaccuracy. The *Coe* court held that plaintiffs had alleged sufficient facts to "afford a basis for believing that plaintiffs could prove scienter" as plaintiffs could not be expected at that point in the litigation to have the in-depth knowledge of the internal affairs of defendant corporation that would be required to state their claim with great particularity.

In the instant case, Plaintiffs distinguish *DiLeo v. Ernst and Young*, 901 F.2d 624 (7th Cir.1990) by stressing that the plaintiffs in that case failed to plead *any* allegations from which one could infer that defendants knew or should have known that the bank's loan loss provisions were unreasonable. Plaintiffs also distinguish *Robin v. Arthur Young and Co.*, 915 F.2d 1120 (7th Cir.1990) on its facts. In that secondary liability case, the court ruled that plaintiff's claim that Arthur Young should have known that the prospectus was false and misleading was a conclusory allegation which failed to plead fraud with sufficient particularity. Noting that Arthur Young would not have discovered this evidence even through routine audit, the court held that plaintiffs failed to allege how Arthur Young was supposed to discover the misleading evidence. 915 F.2d at 1127.

Plaintiffs also distinguish *First Chicago* by explaining that, in that case, plaintiffs simply quoted documents and alleged that the statements made therein were untrue without actually explaining how or why they were false representations. 769 F.Supp. at 1453–54. In the instant case, Plaintiffs argue that they

have provided numerous factual allegations which allege what, why, and how statements and omissions were fraudulent.

Lacking direct evidence, Plaintiffs' complaint concentrates on establishing motive and circumstantial evidence which may infer scienter. Defendants argue that Plaintiffs' attempt to allege motive fails. They deny that status as officers gives rise to an inference of motive to commit fraud. Defendants state that *DiLeo* and its progeny make clear that Plaintiffs cannot sidestep Rule 9(b) by making conclusory allegations that could be leveled against any officer of any company. Instead, Plaintiffs must plead specific facts that separate ordinary business reverses from fraud in this case. 901 F.2d at 627.

Defendants also argue that Plaintiffs' alleged motive is irrational because the individual Defendants had too much to lose both monetarily and in terms of prestige and reputation to engage in fraud. Defendant contends that this is particularly so in light of the fact that they voluntarily disclosed the alleged withheld information on June 25, 1990. Defendants cite *DiLeo*, where the court ruled that because defendant accounting firm's greatest asset was its reputation for honesty, it would have been irrational for the firm to have joined cause with the primary violators. 901 F.2d at 629.

Plaintiffs argue that their allegation of motive contained in ¶ 14 of the complaint provides a non-exhaustive list of reasons why senior insiders such as Defendants have a motive to cover up financial problems plaguing the company during their stewardship. *See Morse v. Abbott Laboratories*, 756 F.Supp. 1108, 1111 (N.D.Ill.1991), where the court held:

> [u]nlike *DiLeo*, the individual defendants, all directors and/or senior officers, have incentive to withhold disclosure of material information which would have had an adverse effect on [the company].

In that case, defendants were in possession of adverse information regarding Food and Drug Administration sanctions against the company due to regulatory violations on the part of Abbott Laboratories and failed to disclose this material information during the class period.

In the instant case, Plaintiffs contend that Defendants' voluntary disclosure at the end of the class period does not negate an incentive to delay as long as possible disclosure of the adverse news. Plaintiffs distinguish Defendants' reference to *Goldberg v. Freedom Federal Savings Bank*, 1989 WL 8503 at *3 (N.D.Ill., Jan. 31, 1989), *aff'd sub. nom. Goldberg v. Household Bank FSB*, 890 F.2d 965 (7th Cir.1989) (the court held that "management candor officiates any inference of willful intent.") In the *Goldberg* case, the court found that defendants promptly disclosed the material information upon reasonable discovery, unlike the instant case, where Plaintiffs' allegations infer that Defendants had the material information for some months prior to its disclosure.

The court finds that Plaintiffs have sufficiently pleaded allegations of motive from which scienter may be inferred. Plaintiffs have alleged that defendants were corporate officers responsible for the management and financial decisions in the company with reputations, job stability, and personal investments on the line. Given the nature of their particular positions and responsibilities, one may infer that they were privy to the adverse information alleged in plaintiff's complaint and capable of recognizing the potential impact of that information on the financial health of the company. This court finds Plaintiff's analogy to *Morse* persuasive when considering Plaintiffs' allegations of known adverse information during the class period which was not disclosed, including the general condition of the Brazilian economy before March 16, 1990 and the details of that government's reforms after March 16, 1990. Plaintiffs' allegations create a strong inference that Defendants, like the officers in *Morse* who were in a position to assess the negative impact of the FDA sanctions, knew about adverse information affecting the company and had reason to downplay its effects given their direct accountability for the company's performance.

The court is not persuaded that the facts of this case are comparable to those in *First Chicago*, where the court's rejection of motive appears to rely upon its assessment of the defendants as being primarily lenders and only secondarily as officers, ruling that their jobs would be jeopardized more by the failure to follow lending procedures than by disclosure of depressed earnings earlier rather than later due to bad loans. 769 F.Supp. at 1455. Although that court also considered as a factor the fact that defendants did not sell their personal stock during the class period (also the case here), this fact was not dispositive when assessing what was in defendants' interest which might provide the requisite motive for scienter under 9(b).

The court rejects Defendants' argument that the motive alleged in Plaintiffs' complaint is "irrational" and therefore requires "strong" circumstantial evidence. This is not a case like *DiLeo*, where defendants were accountants *hired* by the company, and where the motivation to maintain one contract with a client at the price of committing fraud was determined to be illogical by the court when that price risked perhaps the most valuable asset to an accounting firm, its reputation.

In the instant case, defendants were controlling persons, insiders, and officers who had everything to gain or lose depending on how the shareholders, and the market in general, perceived their performance. The fact that defendants voluntarily disclosed the adverse information in June before they were obligated to make their next financial disclosure does not necessarily vitiate motive. The fact that the individual defendants ultimately disclosed adverse information despite a combined personal loss of millions of dollars can be argued both ways. Their large personal investments might have provided a motive for the delay in that disclosure until the disclosure became inevitable. Defendant's reliance on *Goldberg* for this proposition is accorded little weight, given the distinguishable facts in that case which indicated that the firm had made an honest miscalculation in stating it's semi-annual earnings. Upon discovery of that mistake, the firm corrected it to it's detriment, as the firm was then on the auction block.

The court is required to accept Plaintiffs' factual allegations as true pursuant to the standard of review for a motion to dismiss. Therefore, it appears from the face of the

complaint that Plaintiffs have alleged sufficient motive on the part of the Defendants to materially misrepresent the financial condition of the company. Plaintiffs have met their burden of pleading the element of scienter necessary for a 10(b)/10b–5 cause of action with the requisite particularity required by Rule 9(b). Whether plaintiffs have met their burden under the full screen of particularly required under 9(b) with regard to the who, what, how, why and where under *DiLeo* is an issue left for Defendants' second dispositive motion under Rules 12(b)(6) and 9(b) discussed below. Because the court finds that Plaintiffs' Second Amended Complaint alleges motive sufficient to meet Rule 9(b) requirements, it does not reach the issue of whether there is sufficient circumstantial evidence pleaded pursuant to the third alternative method of establishing scienter in accordance with Rule 9(b).

II. *Defendants' Motion to Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 9(b) and 12(b).*

A. Legal Standards Under Rule 9(b).

When a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that the "circumstances constituting fraud or mistake shall be stated with particularity." Three well-established purposes for this rule are the following:

(1) The filing of "strike suits" or complaints as pretexts for the discovery of unknown wrongs is inhibited; (2) defendants are protected from the harm that results from charges of serious wrongdoing; and (3) defendants are ensured notice of the conduct complained of, enabling them to prepare a defense. (Citations omitted).

*In re First Chicago Corporation Secur. Litigation,* 769 F.Supp. 1444, 1452 (N.D.Ill.1991). The Seventh Circuit has expanded upon this requirement in two leading cases, *DiLeo v. Ernst & Young,* 901 F.2d 624 (7th Cir.1990), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) and *Sears v. Likens,* 912 F.2d 889 (7th Cir.1990). In *DiLeo,* plaintiffs were shareholders suing the accounting firm of a financially distressed bank. Plaintiffs alleged that (1) the firm violated the securities laws directly by certifying fraudulent financial statements that were incorporated into documents, and (2) the firm aided and abetted the bank's primary violations of the securities laws. 901 F.2d at 626. The basis for plaintiff's complaint was that the bank failed to increase its reserves fast enough to cover failing loans. Judge Easterbrook affirmed the lower court's decision by ruling that the complaint inadequately alleged the firm's violations of securities laws or its liability as aider and abetter. The court ruled that:

[a]lthough states of mind may be pleaded generally, the "circumstances" must be pleaded in detail. This means the who, what, when, where and how: the first paragraph of any newspaper story. None of this appears in the complaint....

901 F.2d at 627. The court held that investors seeking relief under Rule 10b–5 must provide some facts suggesting fraud which distinguished their situation from legitimate business reverses and the benefit of hindsight. 901 F.2d at 627, 628.

In *Sears v. Likens, supra,* minority shareholders brought an action against various defendants alleging they were deprived of full value of their stock when the corporation went into dissolution. The Seventh Circuit affirmed the lower court by ruling that the shareholders had failed to allege fraud with sufficient particularity as to state securities fraud claims. The court re-emphasized the threshold requirements for pleading under Rule 9(b):

a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.

912 F.2d at 893. In that case, plaintiffs made conclusory allegations which did not detail the participants regarding "who" "how" or "when."

Plaintiffs must provide more than conclusory allegations to satisfy the Rule 9(b) requirement that the circumstances of fraud be pleaded with particularity. *Robin v. Arthur & Co.,* 915 F.2d 1120 (7th Cir.1990). In *Robin,* investors sued the accounting firm which certified the financial statement contained in the allegedly misleading prospectus of the company charged with primary liability under the security laws. In affirming the lower court's dismissal, the Seventh Circuit stated that:

> [w]hile reckless conduct may satisfy the scienter requirement, bare allegations that Arthur Young should have known or that its knowledge was due to a reckless disregard of the truth are not sufficient to turn a possible negligence or malpractice action into an action for securities fraud.

915 F.2d at 1127.

Although courts have subsequently recognized the particularity requirements of *Di-Leo* and *Sears* as controlling in this Circuit, the court in *Reshal Assoc., Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226 (N.D.Ill.1990) warned against a mechanical application of these requirements. It stated that "Rule 9(b) must not be applied blindly, but rather must be applied in view of its purposes." 754 F.Supp. at 1230. In that case, Judge Rovner denied the portion of defendant's motion to dismiss which claimed that plaintiffs failed to distinguish among defendants sufficiently enough to inform them of the nature of the claimed wrong, thereby denying them the opportunity to formulate an effective defense. 754 F.Supp. at 1231. In *First Chicago, supra,* the court stated that technical compliance with Rule 9(b) by providing specific information as to time, place, content, and speaker, was not enough. 769 F.Supp. at 1453. When a complaint is based on information and belief, the court stated that Rule 9(b) requires that the complaint set forth the facts on which the belief is founded. *Id.*

Defendants argue that the court must examine the complaint on a statement-by-statement basis "to determine if any particular utterance can be considered false or misleading." *In re Sun Microsystems, Inc. Secur. Litigation,* CCH Fed.Sec.L.Rep. ¶ 95,504,

97,635, 1990 WL 169140 (N.D.Cal.1990), citing *In re Apple Computers Secur. Litigation,* 886 F.2d 1109, 1116 (9th Cir.1989). Defendants contend that Plaintiffs' complaint falls short of meeting the requirements under Rule 9(b) in one of two ways: (1) particular allegations contained in the complaint are conclusory and lack the factual foundation necessary to support a claim of fraud under Rule 9(b); and (2) certain allegations fail to satisfy the requirements set out in *DiLeo,* particularly the "who" requirement. *See McKee v. Pope Ballard Shepard and Fowle, Ltd.,* 604 F.Supp. 927, 931 (N.D.Ill.1985) (the court ruled that the identity of those charged with making the misrepresentations is crucial); *Tannebaum v. Clark,* 1988 WL 130621 (N.D.Ill., Nov. 29, 1988) (securities fraud claims dismissed under Rule 9(b) where plaintiff alleged that two defendants made a series of misrepresentations and "did not adequately plead the contents of the representations and the identity of the party making them").

In light of the three basic purposes of Rule 9(b) articulated in *First Chicago,* Plaintiffs argue that they have pleaded with sufficient particularity to put Defendants on notice of the nature of the claim against them. *See Reshal Assoc., Inc. v. Long Grove Trading Company,* where the court stated that "[t]he strictness with which this rule is applied ... varies according to the nature of the allegations...." 754 F.Supp. at 1231. That court recognized that at the pleading stage, plaintiffs may not have access to relevant evidence in exclusive possession of defendants. The focus of the court's concern was whether the allegations were pleaded in sufficient detail to put defendants on notice of the nature of the fraudulent acts alleged that they might adequately defend against them. *Id.; see also Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985).

The court will assess the sufficiency of Plaintiffs' allegations under Rule 9(b) in conjunction with the 12(b)(6) analysis below.

**B. Legal Standards Under Federal Rule of Civil Procedure 12(b)(6).**

By moving under Rule 12(b)(6), the defending party alleges that, accepting the

Plaintiffs' allegations as true, the complaint fails to state a claim upon which relief can be granted. *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir. 1987). In *Gomez,* the Seventh Circuit stressed that a decision to dismiss a suit under 12(b)(6) should not be made lightly as it could "preclude another suit based on any theory that the plaintiff might have advanced on the basis of the facts giving rise to the first action." 811 F.2d at 1039, citing *American Nurses' Asso. v. Illinois,* 783 F.2d 716, 726–27 (7th Cir.1986). Therefore, a district court must accept the well-pleaded allegations of the complaint as true and must view those allegations in the light most favorable to the plaintiff. *Id.* While the complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss, defendant cannot attempt to refute the complaint or to present a different set of allegations. 811 F.2d at 1039. In *Gomez,* the court ruled:

> [t]he attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence ... [I]t is undisputed that the defendant must overcome a high barrier to prevail under Rule 12(b)(6).

811 F.2d at 1039, 1040. Defendants can only prevail on their motion if it is clear that no relief could be granted under any set of facts consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). *See also Robin v. Doctors Officenters Corp.,* 686 F.Supp. 199, 206 (N.D.Ill.1988) (however, the court is not bound by the legal characterizations that plaintiff attributes to the facts).

### C. Pleading the Elements of a 10(b)/10b–5 Action in Order to Survive a 12(b)(6) Motion.

Under Rule 12(b)(6), Plaintiffs must plead factual allegations that establish each necessary element of a claim under § 10(b) and Rule 10b–5. *See, e.g., Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322, 1325 (7th Cir.1989) (dismissal of securities fraud action with prejudice under Rule 12(b)(6)

affirmed where plaintiffs failed to plead reliance element of Rule 10b–5); *Greenberg v. Boettcher & Co.,* 755 F.Supp. 776, 780–81 (N.D.Ill.1991) (securities fraud complaint dismissed under Rule 12(b)(6) where plaintiffs failed to plead adequately reliance and causation elements).

To establish a violation of § 10(b) and Rule 10b–5, a plaintiff must demonstrate that the defendants:

> (1) in connection with a securities transaction, (2) made an untrue statement of material fact or omitted a material fact that rendered the statements made misleading, (3) with the intent to mislead (scienter), and (4) which caused plaintiff's loss (reliance and causation).

*Greenberg,* 755 F.Supp. at 780, citing *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 943 (7th Cir.1989).

█ In addition to the elements of materiality, scienter, reliance, and causation, Defendants must have had a duty to disclose. In *Basic, Inc. v. Levinson,* 485 U.S. 224, 239, n. 17, 108 S.Ct. 978, 987, n. 17, 99 L.Ed.2d 194 (1988), the Court stated that "[to] be actionable, of course, a statement must also be misleading. Silence, absent a duty to disclose, is not misleading under Rule 10b–5." In determining a duty to disclose, the court may have to analyze materiality, certainty, whether the information is protected, or whether the information is misleading. *See, in general, Basic, Inc. v. Levinson,* 485 U.S. 224, 239, n. 17, 108 S.Ct. 978, 987, n. 17, 99 L.Ed.2d 194 (1988); *Schlifke v. Seafirst Corp.,* 866 F.2d 935 (7th Cir.1989); *In re First Chicago Corporation Secur. Litigation,* 769 F.Supp. 1444 (N.D.Ill.1991).

In the instant case, Defendants argue that the court must examine a complaint under 12(b)(6) on a statement-by-statement basis "to determine if any particular utterance can be considered false or misleading." *In re Sun Microsystems, Inc. Secur. Litigation,* CCH Fed.Sec.L.Rep. ¶ 95,504 at 97,635 (N.D.Cal.1990), *citing, In re Apple Computer Secur. Litigation,* 886 F.2d 1109, 1116 (9th Cir.1989) (plaintiffs may defeat summary judgment only by showing a genuine issue of

fact with regard to a particular statement by defendant corporation).

Defendants review the legislative history of § 11 of the 1933 Securities Act which is relevant to 17 C.F.R. 240.10b–5 (prohibits omissions of "a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading") because the language of Rule 10b–5 is modeled after § 11. Courts have held that both provisions impose the same liability for omissions. *Rubin v. Long Island Lighting Co.*, 576 F.Supp. 608, 612 (E.D.N.Y.1984). Section 11 requires disclosure only if information is "required to be stated" under specified disclosure rules or "necessary to make the statements therein not misleading." The Conference Report on the final bill which contains § 11 adopted by both Houses commented that the language regarding omissions:

> [h]as been clarified ... to make the omission relate to the statements made in order that these statements shall not be misleading, rather than making mere omission a ground for liability where no circumstances exist to make the omission in itself misleading.

H.R.Rep. No. 152, 73rd Cong., 1st Sess. 26 (1939). Thus, Defendants conclude that "an omission is relevant under 10b–5 only if the fact of that omission caused some other identified statement to *itself* be misleading at the time it was made." (Emphasis added). Defendants suggest that the court classify each statement according to whether it is: (1) a statement of historical fact or (2) a forward looking protection or opinion. Each of the two types of statements should then be further classified according to whether it is alleged to be: (a) affirmatively false, (b) rendered misleading as the result of an alleged omission. Defendants argue that a statement of historical fact is actionable under § 10(b) if it is sufficiently alleged that the statement is either (1) false or (2) misleading because of omitted information.

Defendants contend that Plaintiffs must identify with specificity a "causal link," or nexus between the alleged misleading statements and the related omissions which clarifies how a particular omission rendered the statement misleading at the time of its issuance. *In re Fleet/Norstar Secur. Litigation*, CCH Fed.Sec.L.Rep. ¶ 96,146 at 90,816, 1991 WL 185171 (D.C.R.I., June 5, 1991) (the court dismissed plaintiff's complaint because "plaintiffs failed to demonstrate how the challenged statements are misleading"). Defendants argue that "the statement made must itself be incomplete to be actionable, and if it is incomplete, then the omitted material must be so related to the statement made that the statement made is misleading without the omitted material." *See Backman v. Polaroid Corp.*, 910 F.2d 10, 17 (1st Cir.1990); *In re Sun Microsystems, Inc. Secur. Litigation*, CCH Fed.Sec.L.Rep. ¶ 95,-504 at 97,638; *Scola v. Comdisco*, 1991 WL 93268 at *4 (N.D.Ill., May 22, 1991); *Capri Optics Profit Sharing v. Digital Equipment Corporation*, 760 F.Supp. 227, 233 (D.Mass. 1991).

Plaintiffs disagree with Defendant's statement-by-statement approach and argue that statements are actionable where they mislead because of a failure to speak the full truth. *See Rowe v. Maremont Corp.*, 650 F.Supp. 1091, 1105 (N.D.Ill.1986); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 292 (7th Cir.1981) ("[O]nce a company undertakes partial disclosure of ... information there is a duty to make the full disclosure of known facts necessary to avoid making such statements misleading"); *Issen v. GSC Enterprises, Inc.*, 538 F.Supp. 745, 751 (N.D.Ill.1982) ("when a party undertakes to disclose anything, it has the duty to speak the full truth").

The cases on which Plaintiffs rely speak in terms of "information," "facts," and "statements" disclosed or omitted, rather than isolated statements and/or isolated omissions to which they are linked (emphasis added). *See Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317 (7th Cir.1988) where the Seventh Circuit reversed and remanded the district court's order granting seller's motion to dismiss a securities fraud action brought by buyers of a working interest in an oil and gas well. Investors in that case alleged that defendants made affirmative misrepresentations and omitted material information regarding the production history and future

prospects for certain oil wells. 844 F.2d at 1321. The court analyzed oral and written representations made by defendants, analyzed the statements in relation to each other and in the context in which they were presented in making its determination as to whether they were false or misleading. 844 F.2d at 1324, 1325.

Plaintiffs argue that determining the "circumstances under which the statements were made" requires the statements to be viewed in the context of each other as part of an integrated whole. Taken in context, Plaintiffs allege that Defendant corporation was publicly portrayed as a company where "everything [was] going right, which [was] unthreatened by external events in Brazil, and which [was] pregnant with the potential for short-term profits." *See* Plaintiffs' brief at p. 8; *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988) (Fifth Circuit ruled that "courts interpreting the securities laws have long recognized that reviewing the context in which disclosure appears is an essential part of determining the disclosure's adequacy"), *Id.* at 201, 202, citing *Greenapple v. Detroit Edison Co.*, 618 F.2d 198 (2nd Cir.1980) (the court found a violation "notwithstanding the broad discretion which users have in assembling and organizing their data, where the method of presentation obscures or distorts the significance of material facts.... [E]mphasis and gloss can in the right circumstances, create liability under ... Rule 10b–5...."); *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 605 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974) ("[an] adequacy of disclosure is a function of position, emphasis, and the reasonable anticipation that certain future events will occur." *See also McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576 (2nd Cir.1990), where the Second Circuit reversed the lower court's dismissal of an action because the information provided by defendants was "literally true" and therefore not misleading. 900 F.2d at 579. That court held:

> [w]hen read as a whole, the defendant's representations connotated a richer message than conveyed by a literal reading of the statements. The central issue on all

three claims is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the debentures.... [T]he disclosure required by securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers.

*Id.* at 579. *See also SEC v. C.R. Richmond & Co.*, 565 F.2d 1101, 1106–07 (9th Cir.1977).

■ Unlike an allegation involving a historical statement, where plaintiff must allege that the statement is either false or misleading because of the omitted information, an allegation involving a forward-looking statement must include specific facts which demonstrate (1) the absence of a good faith belief in the statement at the time it was made, or (2) that the statement had no reasonable basis at the time it was made. *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 513 (7th Cir.1989) ("forward looking statements need not be correct; it is enough that they have a reasonable basis."); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 117 (2nd Cir.1982) ("economic prognostication, though faulty, does not, without more, amount to fraud"), *citing, Polin v. Conductron Corporation*, 552 F.2d 797, 805 (8th Cir.1977).

Defendants argue that conclusory allegations will not suffice, and facts are required to support any allegation of lack of good faith belief or the lack of a reasonable basis. *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1518 (N.D.Cal.1990). (allegations of false projects are defective where "plaintiff has failed to sufficiently allege that defendants' statements were made other than in good faith"); *In re Chaus Secur. Litigation*, CCH Fed.Sec.L.Rep. ¶ 95,646, 98,002, 1990 WL 188921 (S.D.N.Y.1990) (court does not find forward-looking statements contained in an annual report misleading when "the complaint states no factual basis to suggest that the defendants knew or should have known that these prophecies were false when made in 1986 and 1987."

(Citing *Schwartz v. Novo Industri, A/S*, 658 F.Supp. 795, 799 (S.D.N.Y.1987))).

Like historical statements, Defendants argue that Plaintiffs must establish the same nexus between the projection actually made and the alleged omission. *Capri Optics*, 760 F.Supp. 227 (D.Mass.1991); *In re Sun Microsystems*, CCH Fed.Sec.L.Rep. at ¶ 97,639.

Plaintiffs agree that forward-looking statements can be actionable if they are false, misleading, or lack a good faith basis. *Fisher v. Samuels*, 691 F.Supp. 63, 69 (N.D.Ill. 1988); *Abrams v. Oppenheimer Government Secur. Inc.*, 589 F.Supp. 4, 9 (N.D.Ill.1983), *aff'd*, 737 F.2d 582 (7th Cir.1984). Plaintiffs note the importance of liability for forward-looking statements as reflected by the Seventh Circuit in *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 514 (7th Cir.1989), where the court stated, "[i]nvestors value securities because of beliefs about how firms will do tomorrow, not because of how they did yesterday." In *Good v. Zenith Electronics Corp.*, 751 F.Supp. 1320, 1322 (N.D.Ill. 1990), the court ruled that providing an earnings projection may violate § 10(b) where defendant "ignor[ed] facts seriously undermining the accuracy of the forecast." *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 490 (9th Cir.1974). 751 F.Supp. at 1322.

Plaintiffs contend that Defendants have a duty to correct misleading statements even if the original communication was made in good faith. *Good v. Zenith Electronics Corp.*, 751 F.Supp. at 1322 (if a corporation voluntarily makes a public statement that is correct when issued, it has a duty to update that statement if it becomes materially misleading in light of subsequent events); *Greenfield v. Heublein, Inc.*, 742 F.2d 751, 758 (3rd Cir. 1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985).

 This court finds that alleged material omissions must be linked to identified affirmative statements. However, the court does not find that in order to plead a Rule 10b–5 action sufficient to survive a 12(b)(6) motion to dismiss, each statement, isolated and by itself, must be rendered incomplete or misleading by virtue of a particular omission. To grant dismissal of a statement at this stage of analysis would preclude the court

from reaching the next essential step in analyzing the sufficiency of Plaintiffs' allegations under 12(b)(6), the analysis of the statement in context with all other material information disclosed, or "in light of the circumstances under which they were made." 17 C.F.R. 240.10b–5. Although this court agrees that a statement-by-statement analysis is helpful in determining whether Plaintiffs have alleged their securities fraud claims sufficiently under the requirements of 9(b) and 12(b)(6), the court recognizes that:

> [s]ome statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the security law is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers.

*In re Convergent Technologies Secur. Litigation*, 948 F.2d 507 (9th Cir.1991); *Morris v. Newman*, 948 F.2d 507, 512 (9th Cir.1991), *citing, McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 579 (2nd Cir.1990).

The contrary authority cited by Defendant, *In re Sun Microsystems, Inc. Secur. Litigation*, CCH Fed.Sec.L.Rep. ¶ 95,504 at 97,635 (N.D.Cal.1990) and *In re Apple Computer Secur. Litigation*, 886 F.2d 1109, 1116 (9th Cir.1989), is not persuasive in light of this court's interpretation of the legislative history discussed above, the precedent set by the Seventh, Fifth, and Second Circuits, and the basic purpose for which § 10(b) and Rule 10b–5 exist, that is to ensure that all relevant material information regarding publicly traded securities is disseminated into the market completely and accurately so that investors and analysts may rely upon the integrity of that market in making their investment decisions.

 In assessing the sufficiency with which Plaintiffs make their allegations in light of Defendants' 12(b)(6) motion to dismiss, the court will analyze the identified affirmative statements individually and collectively in the context in which they are made. This court is mindful of its duty regarding a Rule 12(b)(6) motion to "not ...

weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2nd Cir.1985). Therefore, this court will not render any decision as to whether a particular statement is rendered misleading by a particular omission. It will merely determine whether Plaintiffs have sufficiently alleged circumstances under which Plaintiffs could conceivably prove their claim of fraudulent misrepresentation under any set of facts at trial. If the court finds that an alleged material omission clearly would not render any identified affirmative statement *or statements* made by Defendants misleading under any set of facts, then Plaintiffs will have failed to meet their burden under Rule 12(b)(6) to plead their § 10(b) claim sufficiently with regard to the statement or statements.

D. Analysis of Defendants' Statements Under the Requirements of Rule 9(b) and Rule 12(b)(6).

1. Disclosure that Caterpillar's Brazilian Operations Generated Only Five Percent of Caterpillar's Sales. See Plaintiffs' Second Amended Complaint ¶¶ 33(a), 26.

The allegations in ¶¶ 26 and 33(a) were allegedly disclosed to analysts by Defendants before ultimate release through three different analysts' reports. The central 9(b) issue is whether Plaintiffs have alleged with particularity the "who" requirement. In other words, can Defendants be liable for secondary information disseminated through analysts' reports. The court finds that Plaintiffs' complaint sufficiently alleges facts which reasonably infer that Defendants were responsible for the information released by the analysts regarding the disclosure that Caterpillar's Brazilian operations generated only five percent of Caterpillar's sales. *See, Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598 (N.D.Cal.1991). Defendants' authority to the contrary is factually distinguishable. *See, Pershing v. Sirmer*, 1989 WL 165155 (N.D.Ill., Dec. 27, 1989); *McKee v. Pope, Ballard, Shepard and Fowle, Ltd.*, 604 F.Supp. 927 (N.D.Ill.1985); and *Tannebaum v. Clark*, 1988 WL 130621 (N.D.Ill.,

Nov. 29, 1989). The court holds that Plaintiffs have met their burden under Rule 9(b) with regard to the five percent sales disclosure.

The court also finds that Plaintiffs have met their burden pursuant to Rule 12(b)(6). The allegations in ¶ 26 of Plaintiffs' complaint could support a finding on the merits that the five percent sales statement was misleading, given the omission of the fact that approximately 20% of Caterpillar's profits were generated in Brazil. This is firm-specific information which is arguably material and sufficiently connected to the alleged misstatement. Defendants have a duty to disclose material, firm-specific information even if they have not done so historically, if that information effectively renders an affirmative statement misleading. Plaintiffs have sufficiently alleged facts which indicate that Defendants could have been in possession of material adverse knowledge regarding the Brazilian economy as early as January or February of 1990, even though the Brazilian government did not make formal reforms until March 16, 1990.

For the reasons stated above, the court denies Defendants' motion to dismiss regarding the allegations pertinent to Caterpillar's Brazilian operations generating only five percent of Caterpillar's sales.

2. Statements Made In Caterpillar's January 18, 1990 Press Release:

a. "Sales in Brazil, however, could be hurt by post-election policies which will likely aim at curbing inflation."

b. "Consequently, we expect 1990 profit to be under considerable pressure most of the year."

c. "On the positive side, company sales for the year should benefit from somewhat higher price realization, availability of new products, and continued strong demand for large machines."

Under Rule 12(b)(6), these statements are forward-looking. Therefore, Plaintiffs must have alleged facts sufficient to suggest bad faith or no reasonable basis on the part of Defendants at the time these statements were made. The alleged misleading omissions must also be sufficiently linked

to the affirmative statements so as to render them inaccurate or misleading without the disclosure of such omissions.

Plaintiffs allege that the significance of these statements is lost because of the omission of the 20% Brazilian profit figure. Plaintiffs claim that Defendants knew at the time the statements were made that Caterpillar was being negatively impacted by the economic turmoil in Brazil. Therefore, Plaintiffs contend that statement "a." is misleading because in January, it was no longer speculation that Brazilian sales would suffer. Taken in context, Plaintiffs argue that statement "b." is a misleading half-truth because Defendant knew at the time that statement was made that the anticipated economic reforms in Brazil would have a profound affect on Caterpillar's ability to earn profits in Brazil, a market which constituted approximately one-fifth of Caterpillar's profits in 1989. Plaintiffs contend that the sales and demand figures contained in statement "c." were illusory because they were fueled artificially by hidden economic factors such as currency translations.

The court finds that the allegations directed toward statements "a.," "b.," and "c." meet the Rule 9(b) requirements for particularity and the Rule 12(b)(6) requirement for a factual inference that Defendants had no reasonable basis for making these statements at the time they were made. Therefore, the court denies Defendants' motion to dismiss regarding the allegations pertaining to the identified statements contained in the January 18, 1990 press release.

3. Statements Made in First Boston Report Issued on January 25, 1990.

a. "By region, we believe Cat is forecasting a 5–10% decline domestic and a 0–5% hike overseas, with as much as 2–4% of the domestic cut-back coming in truck engines."

b. "Based on conversations with management, we believe the net incremental benefit will be in excess of $100 million."

██ Under Rule 9(b), the question of "who" the statements are attributable to is satisfied. The statements in context are ambiguous enough to raise an inference that Caterpillar was the source of the information above.

Under Rule 12(b)(6), Plaintiffs allege that there was no reasonable basis for the prediction in statement "a." given the economic situation in Brazil at the time. Plaintiffs make specific allegations regarding how the increase in sales *in 1989* were largely due to activity in Brazil and therefore misleading because this increase was not demand driven, but created artificially by other economic factors. This court finds that Plaintiffs have failed to plead adequately facts which infer no reasonable basis or lack of good faith with regard to statement "a." Plaintiffs fail to allege facts which suggest that Brazil's potentially negative contribution to "overseas" sales render this figure unreasonable given the potential performance of other overseas markets and Brazil's relatively small fraction thereof.

Similarly, Plaintiffs fail to allege sufficient facts which suggest either bad faith or lack of reasonable basis for statement "b." and therefore fail to meet their burden under Rule 12(b)(6). Therefore, the court finds that although these statements meet the requirements of Rule 9(b), they do not meet the requirements of Rule 12(b)(6). Therefore, Defendants' motion to dismiss regarding these statements is granted.

4. Statements Made in Caterpillar's 1989 Annual Report.

a. "Brazil, with its 140 million inhabitants, represents great potential for Caterpillar's future. Brazil is Caterpillar's fourth largest national market."

b. "Overseas sales were 11% higher than in 1988 with demand especially strong in Europe, Brazil, Australia, and the Far East."

██ Plaintiffs have successfully pleaded with particularity their allegations regarding these statements pursuant to Rule 9(b). They have also sufficiently pleaded allegations which challenge the reasonable basis for statement "a." and the degree to which statement "b." was misleading when taken in context and in light of the economic factors in Brazil which allegedly rendered demand in Brazil illusory.

Plaintiffs have pleaded sufficient detail to meet their burden under Rule 9(b) with regard to statement "b." Plaintiffs have also succeeded to plead factual allegations which infer that this historical fact was misleading.

 c. "Reorganization will improve our competitiveness and help us achieve better returns for stockholders."

 d. "Expectation that benefits will exceed costs regarding PWAF project in 1990."

Although the allegations regarding these statements meet the requirements of Rule 9(b), Plaintiffs have failed to allege any facts which suggest bad faith or unreasonableness at the time they were made. Therefore, Defendants' motion to dismiss with regard to statements "c." and "d." is granted.

5. Statements Made in Caterpillar's First Quarterly Report, Released May 9, 1990.

 a. "In Brazil, demand increased over one year ago despite the uncertainty of Brazilian economy."

 b. "The company hasn't changed its outlook from what was stated in its 1989 annual report."

 Plaintiffs have met their burden under Rule 9(b) with regard to statements "a." and "b." They have also successfully pleaded allegations which infer that statement "a.", as a historical statement, was rendered misleading by undisclosed information regarding the Brazilian government's announced reforms as of March 16, 1990.

They have also provided sufficient allegations regarding Brazil which challenge the reasonableness of statement "b." as a forward-looking statement. Therefore, Defendants' motion to dismiss with regard to these statements is denied.

6. Kuchan's Statement Regarding "Overseas" Markets Remains Strong. (Reported to the Press on February 26, 1990).

 Plaintiffs have met their burden under both Rule 9(b) and 12(b)(6) with regard to Defendant Kuchan's statement. Plaintiffs' allegations reasonably infer that this statement was misleading due to the omitted information Caterpillar allegedly possessed at the time regarding Brazilian market. There-

fore, Defendants' motion to dismiss with regard to Defendant Kuchan's statement is denied.

7. Management's Statements Regarding the PWAF and the January Reorganization Alleged in Plaintiffs' Complaint, ¶¶ 43(c), (d) and (e).

 These statements fail to meet the particularity requirements under Rule 9(b) and the requirements of Rule 12(b)(6). Under Rule 9(b), the particular statements are not adequately identified. Under Rule 12(b)(6), Plaintiffs fail to allege facts which infer that Defendants had a duty to disclose this information or that the omission of this information was fraudulent and not simply mismanagement. Therefore, Defendants' motion to dismiss with regard to ¶¶ 43(c), (d) and (e) of Plaintiffs' complaint is granted.

### CONCLUSION

For the reasons cited above, Defendants' Motion to Dismiss for Failure to Adequately Allege Scienter Pursuant to Rule 9(b) is DENIED; Defendants' Motion to Dismiss the Second Amended Complaint Pursuant to Rules 9(b) and 12(b)(6) is GRANTED in part and DENIED in part. This case is referred back to the Magistrate for further proceedings.